STATE OF MISSOURI at the relation of CHARLES W. WORS, Relator, v. JEFFERSON D. HOSTETTER, WILLIAM DEE BECKER and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals.—124 S. W. (2d) 1072.

Court en Banc, February 7, 1939.

*Foristel, Mudd, Blair & Habenicht* for relator.

*Anderson, Gilbert, Wolfort, Allen & Bierman* for respondents.

948

*Maurice J. O'Sullivan* and *Leo T. Schwartz, amici curiae; J. Francis O'Sullivan* of counsel.

*Jacob M. Lashly* for Hartford Accident & Indemnity Company, *amicus curiae.*

950

*Cliff Langsdale* for Missouri State Federation of Labor, Kansas City Building Trades Council and Kansas City Central Labor Union and *Bartley & Mayfield* for St. Louis Building Trades Council and St. Louis Central Trades and Labor Union, *amici curiae.*

ELLISON, J.—Certiorari to the St. Louis Court of Appeals bringing up the record in Wors v. Tarlton et al., 95 S. W. (2d) 1199, a suit at common law for $7500 damages for personal injuries. In addition to the briefs for the relator and the respondents, we are favored with four briefs filed by *amici curiae*: Mr. Cliff Langsdale, representing the Missouri State Federation of Labor, the Kansas City Building Trades Council and the Kansas City Central Labor Union; Messrs. Bartley and Mayfield, representing the St. Louis Building Trades Council and the St. Louis Central Trades and Labor Union; Mr. Jacob M. Lashly, representing the Hartford Accident and Indemnity Company; and Messrs. Maurice J. O'Sullivan and Leo T. Schwartz, who are defending in the Jackson County Circuit Court suits involving the main questions raised in the instant proceeding.

We shall give only a sketchy review of the facts, as they are rather fully stated in the reported opinion of BECKER, J., in the record under review. The Midwest Industrial and Development Company (hereinafter called the Midwest Co.) was engaged in erecting a building on land owned by it in St. Louis, Missouri. It entered into a contract with G. L. Tarlton to do the excavating but reserved to itself the control and supervision of the work, as a consequence of which, it may be said for the purposes of this proceeding, the doctrine of *respondeat superior* applies between the Midwest Co., and the employees of Tarlton. The Midwest Co. entered into a further, separate contract with the Illinois Terminal Company (hereinafter called the Terminal Co.) to build certain temporary railroad tracks to and upon the premises, and to transport the excavated material to Venice, Illinois, thereby involving a movement in interstate commerce. On March 31, 1931, the relator, Wors, an employee of the Terminal Co., was "trimming" or leveling off the dirt in a railroad car as it was being loaded, when a steam shovel operated by one of Tarlton's employees dumped a shovel full of dirt against him and injured him.

All of the four parties mentioned were under the Missouri Workmen's Compensation Act. Two weeks after sustaining the injuries aforesaid, Wors began to receive partial compensation therefor from his immediate employer, the Terminal Co., on a claim he filed with the Compensation Commission, based upon a temporary agreement made with the company. Being unable to agree as to the full amount of compensation due him, he filed a formal claim with the Commission in September, 1931, to which the Terminal Co. filed answer. Evidence was heard, and the Commission made a temporary or partial award. The cause was called for further hearing on December 5, 1933, and, on appearance of the parties and their counsel, by stipu-

lation a final and conclusive total award was entered in favor of Wors for $2276.62 for compensation and medical aid, under Section 3333, Revised Statutes 1929 (Mo. Stat. Ann., p. 8267).** There was, of course, no appeal from that award. Tarlton and the Midwest Co. were not made parties to that proceeding and the defense was not interposed before the Workmen's Compensation Commission that Wors was engaged in interstate commerce when he was injured. While the Compensation proceeding was pending, Wors brought suit in the circuit court, as aforesaid, in August, 1931, against Tarlton and the Midwest Co., for damages for the same injuries. His immediate employer, the Terminal Co., was never joined as a party to that suit, and it was undetermined when Wors obtained his aforesaid final award in December, 1933.

The defendant Midwest Co. thereupon interposed the plea of *res judicata* in the damage suit, claiming the compensation award to Wors barred his action against it, although it was not a party to the compensation proceeding. Wors answered: (1) that the Workmen's Compensation Commission had no jurisdiction to make the award in view of Section 3310, Revised Statutes 1929 (Mo. Stat. Ann., p. 8245), since his injuries were received in interstate commerce and governed exclusively by the Federal Employers' Liability Act; (2) that even if the compensation proceeding and award otherwise would operate as an estoppel, it could not do so in this case against the Midwest Co. because that company was not a party to the compensation proceeding, and was not bound by it; (3) that he (Wors) had the right to maintain the damage suit against the Midwest Co. as a "third party," independent of the Compensation Act, because his immediate employer, the Terminal Co. carried compensation insurance, in consequence of which the Midwest Co. was exempted from compensation liability and became a stranger to the employment under the last sentence of subsection (d) of Section 3308, Revised Statutes 1929 (Mo. Stat. Ann., p. 8242). It is unnecessary to state the issues as to the defendant Tarlton since he later dropped out of the case so far as concerns the controversy here.

The circuit court upheld the contentions of both Tarlton and the Midwest Co., whereupon the plaintiff Wors took an involuntary nonsuit with leave to move to set the same aside. The motion when filed was denied and judgment was entered for both defendants. The respondent judges of the St. Louis Court of Appeals, affirmed the judgment of the trial court as to the defendant Midwest Co., but reversed it and remanded the cause as to the defendant Tarlton. Wors, as relator here, contends that ruling as to the Midwest Co. contravenes controlling decisions of this court.

He first asserts the ruling of the respondent judges that the Work-

---

**See Opinion on Motion for Rehearing.

men's Compensation proceeding barred his damage suit against the Midwest Co., contravenes our holdings in Gieseking v. Litchfield Ry. Co., 339 Mo. 1, 5, 94 S. W. (2d) 375, 376(1); State ex rel. Ward v. Trimble, 327 Mo. 773, 778, 39 S. W. (2d) 372, 374 (8); State ex rel. Compagnie Generale Transatlantique v. Falkenhainer, 309 Mo. 224, 230-1, 274 S. W. 758, 760 (3-5). This is on the broad theory that the Workmen's Compensation Commission had no jurisdiction of his claim, and the same was governed solely by the Federal Employers' Liability Act, since he was engaged in work directly connected with interstate commerce when injured.

Section 3310, supra (Mo. Stat. Ann., p. 8245), in the Compensation Act provides: "this chapter shall apply to all cases within its provisions *except those exclusively covered by any federal law.* (Italics ours.) Further, Section 55 of the Federal Employers' Liability Act (U. S. C. A., Title 45) denounces "any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter" and makes it to that extent void. The Gieseking case holds the Federal Employers' Liability Act is exclusive in the field of interstate transportation; and that the acceptance of benefits under a State Compensation Act therefore will not bar a suit for damages for the same personal injuries brought under the Federal act, *if* they were in fact received while engaged in interstate commerce. The case goes on to say: "at least the United States Supreme Court has never yet ruled" to the contrary.

Counsel for respondents distinguish the Gieseking decision, arguing there was no determination by the Compensation Commission (of Illinois) in that case that the injuries for which benefits were received came within the State Compensation Act and were not inflicted in interstate commerce. We think that is correct. The Gieseking opinion speaks only of the "acceptance of benefits" by the plaintiff and says nothing about any decision by the Illinois Industrial Commission of the question whether the plaintiff was engaged in interstate commerce when injured. And an examination of the record in the cause shows that all the plaintiff there did was to accept benefits according to a schedule fixed by the Illinois Act. There was no arbitration or review by the Industrial Commission—no judgment or decision of any sort. So we conclude the Gieseking case is not controlling authority on the question whether a final *determination* by the Missouri Workmen's Compensation Commission that a claimant's injuries were received in intrastate commerce will operate as an estoppel by judgment, and bar the prosecution of a suit brought by him under the Federal Employers' Liability Act for damages for the same injuries—though it may be authority to the effect that the acceptance of benefits will not operate as an estoppel by contract, or conduct.

On the other hand, the opinion of the respondents in the Wors case cites State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission, 320 Mo. 893, 898, 900, 8 S. W. (2d) 897, 899, 900. This case holds that an award made by the Commission while acting within the scope of its authority "determines the rights of the parties as effectually as a judgment secured by regular legal procedure, and is as binding as a judgment, until it is regularly set aside or its validity questioned in a proper manner." While this case does not discuss the particular question here involved, it is authority at least to the general effect that an award by the Compensation Commission is as binding as the judgment of a court would be in the same circumstance. This is in line with Section 3342, Revised Statutes 1929 (Mo. Stat. Ann., p. 8275), which provides that: "the final award of the commission shall be conclusive and binding unless either party to the dispute shall within thirty days from the date of the final award appeal to the circuit court. . . ."

Counsel for respondents in their brief further cite C., R. I. & P. Ry. Co. v. Schendel, 270 U. S. 611, 70 L. Ed. 757, 56 Sup. Ct. 420, decided in 1926—this anent the statement in the Gieseking case, supra, decided ten years later, that the United States' Supreme Court had never yet ruled the acceptance of benefits under a state compensation act would bar a damage suit for the same personal injuries brought under the Federal Employers' Liability Act. Respondents thus refer to this Federal case on the theory that the Gieseking case was endeavoring to follow the United States Supreme Court, thereby making it proper to invoke the Schendel case even on the question of conflict, in this certiorari proceeding.

There was one opinion in the Schendel decision, covering two cases. Hope and Elder, both employees of the Railway Co. in Iowa, were injured in an accident, the former fatally. Hope's administrator, Schendel, and Elder sued the Railway Co. in Minnesota under the Federal Employers' Liability Act. The Railway Co. instituted proceedings as to both employees in Iowa under the Compensation Act of that state. Elder and Hope's widow challenged the jurisdiction of the Iowa Industrial Commission in both proceedings on the ground that the two employees were engaged in interstate commerce when injured. An arbitral board held Hope was engaged in intrastate commerce and awarded compensation to the widow. She appealed to the Commissioner, who found the same, and thence to the Iowa District Court; where upon a like finding the award was affirmed. This fact was then pleaded by the Railway Co. in invoking the defense of *res judicata* in the Minnesota damage suit, but the Minnesota District and Supreme Courts ruled adversely thereon, and the cause was taken to the United States Supreme Court on certiorari. That court reversed the Minnesota courts, holding that the Iowa District Court had jurisdiction to decide in the compensation pro-

ceeding whether Hope was engaged in intrastate commerce when injured; and that since it had decided he was so engaged, before the Minnesota courts ruled to the contrary, its judgment was controlling.

The Elder proceeding was submitted to an Iowa deputy commissioner, who found that Elder, also, was engaged in intrastate commerce. But an application for review by the Industrial Commissioner was filed by Elder under the Iowa statute, and the matter had not been finally determined when the judgment in the Minnesota damage suit was rendered. In view of the fact that the Iowa proceeding was *in fieri*, the United States Supreme Court refused to decide what the effect of a decision by the Iowa Industrial Commissioner would have been if it had ripened into an enforceable award, and affirmed the judgment of the Minnesota courts in that case.

But it is to be noted that in this Schendel decision the issue whether the employees were engaged in interstate commerce was squarely presented to and decided by the Iowa tribunals, whereas in the instant case no such issue was presented to the Missouri Workmen's Compensation Commission. The respondents' opinion states the record of the Commission shows only that Wors was " 'working on a flat car leveling off dirt' " when injured. Relator says that deprives the Commission's decision of any effect as an estoppel on the question of interstate commerce; respondents say it does not. They point out in their opinion that the Commission's final award of compensation found Wors was entitled to recover for his accident " 'as provided in the Missouri Workmen's Compensation Law,' " and declare the Commission therefore must have resolved the question of its jurisdiction in its own favor, i. e., must have found Wors was engaged in intrastate, not interstate, commerce when injured.

This latter view accords with the doctrine of decisions of this court wherein it is held that a lower court (of record) will be deemed to have decided a jurisdictional or other question consistently with the judgment rendered, even though there was no express finding thereon, if a decision of such question was necessarily involved in arriving at the conclusion announced; State ex rel. Loving v. Trimble, 331 Mo. 446, 453, 53 S. W. (2d) 1033, 1036 (6); State ex rel. Gott v. Fidelity & Deposit Co., 317 Mo. 1078, 1089 (d), 298 S. W. 83, 88 (6); State ex rel. Gordon v. Trimble, 318 Mo. 341, 348, 300 S. W. 475, 478. We have not, however, so far as the writer is aware, passed either way on the application of that doctrine to the holdings of the Workmen's Compensation Commission, a quasi-judicial administrative tribunal whose final awards are made conclusive by statute, Section 3342, supra. It was ruled in Hoffman v. N. Y., N. H. & H. Railroad Co., 74 Fed. (2d) 227, 230(3) that no such "presumption of regularity" accompanies the findings of a Compensation Commission. But since this court has not ruled

on the point we cannot say the holding of the Court of Appeals contravenes our decisions.

■ On authority of State ex rel. Ward v. Trimble, supra, and State ex rel. Compagnie Generale Transatlantique v. Falkenhainer, supra, the relator further contends that even if the Workmen's Compensation Commission had general jurisdiction to pass on the question whether Wors was engaged in intrastate commerce, and did find he was so engaged, yet it had no jurisdiction to make that finding in the particular case below because *all* the evidence showed he was engaged in interstate commerce; and the respondent judges should have ruled accordingly. The Ward case, 327 Mo. l. c. 778, 39 S. W. (2d) l. c. 374 (8), holds that while we are bound, on certiorari, by the Court of Appeals' conclusion on the facts, yet we are not bound by its legal conclusion on those facts if it conflicts with our decisions. The Falkenhainer case, 309 Mo. l. c. 230-1, 274 S. W. l. c. 760 (3-5) holds that when a court's jurisdiction depends upon disputed facts, its findings thereon cannot be questioned collaterally; but when the jurisdictional facts are undisputed, the question of jurisdiction becomes a matter of law and may be raised collaterally.

■ Conceding these general propositions for the purpose of discussion, we are unable to see that they help relator for he has not referred us to any decision of this court, based on facts like or similar to those here involved, holding the employee was engaged in interstate commerce. The authorities he does cite are these. He calls attention to decisions such as Harris v. Mo. Pac. Railroad Co., 342 Mo. 330, 114 S. W. (2d) 988, 991, declaring we must follow the rulings of the United States Supreme Court in applying the Federal Employers' Liability Act; and then cites B. & O. S. W. Ry. Co. v. Burtch, 263 U. S. 540, 544, 68 L. Ed. 433, 44 Sup. Ct. 165, holding in general terms that the loading or unloading of an interstate shipment by employees of the carrier is so closely related to interstate transportation as to be practically a part thereof. This appears to us to be a criticism of respondents' opinion on its merits, and not a showing of conflict with *our* decisions based on similar facts, which, alone, would justify us in overturning the opinion on certiorari.

Furthermore, respondents' opinion states facts which put the case below outside the ruling even in the Burtch case decided by the United States Supreme Court. Respondents quote relator's petition in his damage suit as alleging the work of loading the dirt into the railroad cars "was done independently of any supervision or direction, or right of supervision or direction on the part of" the Terminal Co., and that the work "was done under the sole and exclusive direction, supervision and control of the defendants"—Tarlton and the Midwest Co. We have, then, a case in which the employee of the carrier was doing the loading under the exclusive con-

trol of the shipper; and it is said in 10 Corpus Juris, section 309, page 225, "Delivery cannot be complete if anything remains to be done by the shipper before the goods can be sent on their way." We are cited to no authority from any jurisdiction holding that in these circumstances the work of loading would be a part of interstate commerce.

The second point of conflict urged by the relator is that even if the Workmen's Compensation Commission had jurisdiction to find and did find he was engaged in intrastate commerce when injured, still that decision could not bind the Midwest Co. because it was not a party to the compensation proceeding; and since it did not bind the Midwest Co. it could not bind him, Wors, for the reason that a judgment must be binding on both sides of a litigated controversy in order to bind either and to operate as an estoppel by judgment (citing cases). In other words relator urges he is not estopped from prosecuting the damage suit against the Midwest Company on an interstate commerce theory, merely because he prosecuted the compensation proceeding against another party, the Terminal Co., on an intrastate theory. Respondents answer that contention in their opinion by saying the decision in the compensation proceeding was binding upon and inured to the benefit of the Midwest Co. as a quasi privy, in view of the provisions of Section 3308, Revised Statutes 1929 (Mo. Stat. Ann., p. 8242).

This brings us to relator's third assignment of conflict, which is so closely related to the second, just outlined, that the two must be considered together. The relator denies there was privity between the Midwest Co. and the Terminal Co. in the compensation proceeding, and insists that while subsection (a) and the first part of subsection (d) of Section 3308, supra, made the Midwest Co. liable for compensation to Wors as an employee of its subcontractor, the Terminal Co., yet the last sentence of said subsection (d) completely exempted the Midwest Co. from all liability and made it a suable "third party," because the Terminal Co. carried insurance covering its immediate liability to Wors. This sentence says: "No such (remote) employer shall be liable as in this section provided, if the employee was insured by his immediate or any intermediate employer."

Relator declares in his brief: "This Court, so far as we have been able to find, has never construed subsection (d) of 3308 with respect particularly to the effect of the concluding or insurance clause thereof, upon the relations and respective liabilities prescribed in the preceding portions of this section." He then goes on to say: "Conflict therefore must be found in the failure of the (respondents) to follow the general rules and principles of law for the construction of statutes as laid down by this Court." We are then referred to a number of decisions of this court announcing general rules and principles of law for the construction of statutes.

We cannot consider any of these. Where the meaning of a statute is debatable we cannot on certiorari overturn a Court of Appeals' construction thereof merely because we may think it violates some general canon of construction recognized in our decisions. If it were otherwise we could be asked to review their rulings on all the statutes, bonds, insurance policies, wills, deeds, contracts and other written instruments, that come before them, for all would hinge on some general rule of construction. We have held repeatedly that the Courts of Appeals have the same right we have (within the range of our respective jurisdictions) to construe statutes. Whether we think their construction is right or wrong, we cannot interfere on certiorari unless we have previously given a different construction to the statute. If the construction turns on its application to specific facts, we must have construed it with reference to the same or similar facts. [State ex. rel. Arndt v. Cox, 327 Mo. 790, 797, 38 S. W. (2d) 1079, 1082; State ex rel. Superior Mineral Co. v. Hostetter, J., 337 Mo. 718, 725, 85 S. W. (2d) 743, 744.] Of course, when a statute plainly can have only one meaning under canons of construction established by this court, and a Court of Appeals gives it another meaning, we may interfere because there the *necessary* effect of such erroneous holding is to violate the canons of construction—as much so as if they were expressly denounced. But that is not the case here and seldom occurs.

*Amici curiae* have cited numerous cases from other states bearing pro and con on the construction of the statute. Obviously, we cannot consider them on a question of conflict. The argument is advanced that since our Compensation Act is a composite, a merger of provisions borrowed from like acts of other states, therefore we should construe it in the light of interpretative court decisions from those states. That would be true if we were construing the act independently; but here we are determining whether the St. Louis Court of Appeals opinion contravenes any ruling of *this* court. Incidentally we may say the court en banc has recently ruled in Bunner v. Patti, 343 Mo. 274, 121 S. W. (2d) 153, that subsection (d) of Section 3308 of the Compensation Act will not bear the construction put upon it by relator. It is the first decision by this court on the question and and was decided after the trial of this case below. We refer to it only as an expression of our views on the proposition that no general rules and principles of law for the construction of statutes recognized by this court were violated in respondents' opinion.

Finding no conflict, our writ of certiorari is quashed. All concur, except *Douglas* and *Clark, JJ.*, not voting because not members of the court when cause was submitted.

960

PER CURIAM:—Relator raises a new point in his motion for rehearing. He contends the final award made to him by the Workmen's Compensation Commission on December 5, 1933, cannot operate as an estoppel by judgment on the issue of interstate commerce *vel non*, because the award was not fixed and determined by the Commission but was based on a compromise and stipulation between the parties, made under Section 3333, Revised Statutes 1929 (Mo. Stat. Ann., p. 8267). The mere approval by the Commission of this voluntary settlement was not a "jurisdictional" determination thereof, says the relator. He relies on State ex rel. Saunders v. Workmen's Compensation Commission, 333 Mo. 691, 697, 63 S. W. (2d) 67, 69, to sustain his contention, and says respondents' opinion contravenes that decision.

Section 3333 provides that nothing in the Compensation chapter shall be construed as preventing parties to claims thereunder from entering into voluntary agreements in settlement thereof; but that no such agreements shall be valid until approved by the Commission; and that the Commission shall not approve such settlements unless they are in accord with the rights of the parties under the chapter. A later section, Section 3340, Revised Statutes 1929 (Mo. Stat. Ann., p. 8273), permits the Commission to review "any award" theretofore made, on the ground of a change in condition of the injured employee.

In the Saunders case an injured employee made a temporary agreement with his employer for partial compensation, and thereafter filed a "Final Receipt for Compensation" acknowledging receipt of a stated sum in consideration of which he released the employer from all liability under the Compensation Act by reason of the accident involved, *"subject to review as provided in said act."* (Italics ours.) The settlement was approved by the Commission, apparently on mere inspection. Over four years later the employee filed with the Commission an application for review on the ground of a change in his condition. The Commission refused to consider the application, on the theory that it was without jurisdiction because the execution and approval of the foregoing Final Receipt for Compensation operated as a complete and final settlement of the employers' liability, under Section 3333, supra. Thereupon the employee brought mandamus in this court to compel the Commission to accept jurisdiction of his application for review.

The court en banc in a unanimous opinion conceded Section 3333 does authorize "a final settlement of all liability subject to the approval of the commission," which is not subject to review under Section 3340, notwithstanding the use of the words, "any award" therein; but held the Final Receipt for Compensation there in evi-

dence "was *not* a settlement under Section 3333, and therefore was subject to review on the ground of changed condition, pursuant to Section 3340" (or would have been if the application had been filed in time). The main reason for this holding was that the final receipt expressly recited it was "subject to review as provided in said act." But the opinion took notice of another case: Brown v. Corn Products Refining Co. (Mo. App.), 55 S. W. (2d) 706, where a receipt containing the same words was nevertheless treated as final because of other evidence showing it was intended to be so.

In the instant case the proof is abundant that the final receipt executed by relator Wors was intended to be conclusive. In the first place, the receipt expressly releases the employer from all liability "as provided under Section 3333, Revised Statutes 1929, for compromise lump-sum settlement." Further when the parties went before the referee, it was again stated the settlement was final as contemplated by Section 3333, and the referee asked Wors this question: "Mr. Wors, you have heard this stipulation and do you understand by entering into this compromise lump-sum settlement that closes your case forever under the Compensation Act and that you cannot under any circumstances reopen the case?" And relator Wors answered: "Yes." Thereafter the award based on the stipulation was made by the Commission.

There is nothing in the Saunders case holding such a settlement under Section 3333 is not a final award. The effect of the decision is to the contrary. A settlement under the section, when approved by the Commission, is even more conclusive than an ordinary award made by the Commission on disputed evidence, because the latter is subject to review on the ground of change in condition, whereas the former is irrevocable. Under the express terms of Section 3333 the approval of the Commission is necessary to make the settlement valid. And when so executed and approved there is no reason why it should not be the basis of a claim of *res judicata* or estoppel by judgment.