**MIKE HOOKS, INC., Appellant,**

v.

**Gonzalo PENA, Appellee.**

**No. 19522.**

United States Court of Appeals
Fifth Circuit.

Jan. 30, 1963.

Rehearing Denied Feb. 28, 1963.

Walter E. Workman, Houston, Tex., Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel, for appellant.

Bob J. Spann, Corpus Christi, Tex., for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

To the never ceasing riddle of the ambiguous amphibious worker with its tri-cornered intramural controversy between state-federal compensation and the ubiquitous possibility of a pseudo-seaman's claim [1] and the mutations in the vast body of the law as it passed through the phases of maritime but local,[2] the twilight zone,[3] the first-come-first-served theory [4] and, as some might characterize the most recent development, the doctrine of the last chance,[5] this case adds a further wrinkle. The question is whether determination of a non-seaman status made by the Industrial Accident Board of Texas forecloses a subsequent suit as a seaman under the Jones Act, 46 U.S.C.A. § 688. More precisely, and in more conventional terms, the question is whether such determination is res judicata. The District Court, denying the Employer's motion for summary judgment, held that the seaman's suit was not foreclosed either by res judicata or collateral estoppel. On this interlocutory appeal under 28 U.S. C.A. § 1292(b), we agree and affirm, although not on exactly the same reasoning.[6]

As is so often true for knotty problems, the facts for our purposes are neither complex nor conflicting. Pena, the Employee, worked for Mike Hooks, Inc., the Employer, in connection with its small floating dredge GAYLE. While

1. Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 1960, 276 F.2d 42; Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523.

2. Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321; Robinson, Admiralty § 14, p. 100–109 (1939); Gilmore & Black, Admiralty §§ 6–48, 49, 50 (1957).

3. Davis v. Department of Labor and Industries of Washington, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246, 1942 A.M.C. 1653.

4. De Bardeleben Coal Corp. v. Henderson, 5 Cir., 1944, 142 F.2d 481, 483.

5. Calbeck v. Travelers Ins. Co., 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368, 1962 A.M.C. 1413, reversing Avondale Shipyards, Inc. v. Donovan, 5 Cir., 1961, 293 F.2d 51, 1961 A.M.C. 2006, 2007, 2009, and Travelers Ins. Co. v. Calbeck, 5 Cir., 1961, 293 F.2d 52.

6. The District Judge's order, unaccompanied by a memorandum opinion declared:
"(1) That it is the opinion of this Court that the Industrial Accident Board of Texas has no right to determine whether a person is a seaman or not. That determination is left exclusively to Federal Jurisdiction. * * *."

handling the dredge's discharge line,[7] the Employee injured his hand. The Employer routinely filed the report of injury with the Industrial Accident Board as required by the Texas Workmen's Compensation Act.[8] Within the time permitted the Employee filed formal written notice and claim for compensation.[9] The case was set down for hearing under the Board's rules and practices. No question existed at that time concerning coverage or disability and benefits were voluntarily paid by the Insurance Carrier[10] for 19 weeks without hearing or formal administrative action. By appropriate proceedings, the Employee through counsel then sought additional compensation. This is what precipitated the actions which bring about the problem now before us.

While the record does not indicate how or in what manner it first came about, it is clear that at the time these supplemental proceedings were initiated before the Board, the substantial controversy was between, not the Employee and the Carrier, but rather between the Employer and the Insurance Carrier. Some-

one had raised the question whether the Employee was a seaman, and hence not covered by the Act. More important, this triggered a controversy between the Insurance Carrier and the Employer since the Insurance Carrier was contending that its workmen's compensation insurance policy did not protect the Employer against claims for damages based upon the maritime law or the Jones Act.[11] To avoid these problems of policy coverage, the Employer was simply taking the frontal position that the Employee was not a seaman and was, on the contrary, clearly subject to the State Compensation Act.

About ten days before the scheduled hearing before the Board, the Insurance Carrier formally stated to the Board that "there is a serious question of jurisdiction involved. It is possible that this matter may fall under the Jones Act." On the day of the hearing, the Employer entered the proceedings for the first time. Through separate counsel it filed its letter-application for determination that the Employee was covered under the Texas Act and was not a seaman.[12]

7. If the Employee was a "seaman" and may still assert it, the fact that the injury occurred ashore would not prevent the application of the Jones Act. O'Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596, 1943 A.M.C. 149; Kent v. Shell Oil Co., 5 Cir., 1961, 286 F.2d 746.

8. Tex.Rev.Civ.Stat.Ann. art. 8307 § 7 (Vernon 1956).

9. Art. 8307 § 4a.

10. Liberty Mutual Insurance Company.

11. The Compensation Act subjects an insurance carrier to an obligation to indemnify an employer upon proper notice and opportunity to defend where such employer "is required by any Judgment of a Court at Law, or by any Judgment of a Court of Equity or of admiralty and maritime jurisdiction to pay any employee any damages, actual or exemplary, on account of any personal injury sustained by any such employee in the course of his employment * * *." Art. 8308 § 21. The prescribed form of a Workmen's Compensation Policy includes such coverage. The controversy presumably grew out of that part of the

Employee's potential claim for maintenance, wages and cure under the maritime law. This turned on whether such obligations of the shipowner would come within the concept of "damages" as the statute prescribes or typical policy provisions of a liability "imposed by law" or whether they were more properly contractual in origin and nature.

12. The letter-application of the Employer stated, in part:
"* * * Based upon the facts and record in this case, the employer, Mike Hooks, Inc., respectfully requests the Board to make the following findings under Paragraph 7, 'Special Findings and Orders' in its Award:
"1. That Gonzalo Pena was employed as a dump foreman by the employer, Mike Hooks, Inc., and sustained an injury while working ashore on the date in question.
"2. That said employee was not employed by Mike Hooks, Inc., as a seaman, and was not performing the duties of a seaman at the time of his injury.
"3. That said employee was not employed and did not work, and was not working, as a member of the crew of any

■ The Employee made no effort to controvert this contention or the evidence offered in support of it. But on that very same day the Insurance Carrier in its last authoritative formal statement to the Board [13] categorically declared " * * * the insurer admits liability and has paid benefits under the [Texas Compensation] Act. It therefore appears that the jurisdiction of your Honorable Board is admitted by both parties and is not in question." [14]

The Board thereafter rendered its final award granting compensation for 60 weeks (with credits for prior payments). Under the stereotyped form, the Board found in paragraph 7 "Special Findings and Orders" that the Employee was not a seaman. The Board used the identical language of the Employer's application (see note 12, supra). The Employee, although having a statutory right to file a suit for trial de novo of this and all other issues,[15] filed no such suit. Art. 8307 § 5. The award was therefore final.

A few months thereafter the Employee filed a civil action in the Court below seeking recovery as a seaman for negligence and unseaworthiness and for maintenance, wages and cure. To this complaint, the Employer filed a motion for summary judgment on the ground of res judicata or collateral estoppel. Annexed were supporting documents showing the prior proceedings before the Industrial Accident Board culminating in the final award.

■ While we reject the Employer's appeal, we can agree with several of its subsidiary contentions. Thus, for a litigated matter within the jurisdiction of the Industrial Accident Board, a final award if not appealed from has the same conclusiveness and binding effect as a final judgment of a court.[16] Likewise, it is now clear, that if the jurisdiction of a tribunal is actually brought into question in the proceeding before it, such tribunal has the power to determine its own jurisdiction, and once determined, whether right or wrong, that decision cannot ordinarily be attacked collaterally.[17] Putting to one side for the moment the decisive question whether the Employer could inject itself into these proceedings to thereby become a party, we can also assume that the status of this Employee as a seaman or non-seaman was directly presented as between Employer and Employee. The Compensation Act is so constructed as to extend benefits only to those who are an "Employee" and expressly excluded are "masters or seamen on vessels engaged in interstate or foreign commerce." Art. 8309 § 1.

vessel, including the dredge Gayle, at the time of his injury.

"4. Accordingly, the Board finds that said employee's injury is under the jurisdiction of this Board and is covered by the Texas Workmen's Compensation Law."

Filed with the application was written evidence concerning the nature of the Employee's duties, the work customarily performed by him, his relation to the dredge and the work performed by it. For our purposes, we assume, without deciding, that this evidence showed that the Employee was not a seaman.

13. Based on attached medical reports, the Insurance Carrier suggested issuance of an award allowing temporary total benefits for a specified number of weeks and permanent partial at 5% disability to the thumb.

14. The Carrier impliedly reaffirmed this position by acquiescing in the final award without filing, as it could have, a suit within 20 days to set it aside. Art. 8307 § 5.

15. Art. 8307 § 5.

16. See, e. g., Magnolia Petroleum Co. v. Hunt, 1943, 320 U.S. 430, 435, 64 S.Ct. 208, 88 L.Ed. 149; Ocean Accident & Guarantee Corp. v. Pruitt, Tex.Com. App., 1933, 58 S.W.2d 41; General American Casualty Co. v. Rosas, Tex.Civ.App., 1955, 275 S.W.2d 570 (error ref'd n. r. e.); Traders & General Ins. Co. v. Baker, Tex.Civ.App., 1937, 111 S.W.2d 837 (error dis'md).

17. A leading case is Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L. Ed. 104. See also Davis v. Davis, 1938, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26; City of Buffalo v. Plainfield Hotel Corp., 2 Cir., 1949, 177 F.2d 425; and 31 Col. L.Rev. 238.

■ The District Court was therefore in error in the stated reason (note 6, supra) that only the federal courts could legally determine the status of seaman. This basically confused two separate questions. The first is the matter of the proper substantive standard to be applied—here the federal maritime principles with statutory modifications, such as the Jones Act. The second is the power of a tribunal to determine status (or any other significant fact) upon which, in turn, it determines whether it does, or does not, have jurisdiction.[18] The consequence may often be, then, that a tribunal which does not actually have jurisdiction nevertheless acquires it through its own erroneous decision. Thereby it imposes on the parties substantive standards which really are legally inapplicable.

■ This is illustrated by decisions posing an analogous contest between state compensation acts and, where applicable, superior FELA statutory standards for injured interstate railroad workers. 45 U.S.C.A. § 51 et seq. There the status question turns on intra or interstate employment. With recognition that a State cannot impose State workmen's compensation on an injured interstate railroad worker, the Supreme Court nevertheless applied the doctrine of res judicata to foreclose a subsequent FELA suit where the State compensation tribunal in an adversary hearing determined that the worker was engaged in intrastate employment. Chicago, Rock Island & Pacific Ry. v. Schendel, 1926, 270 U.S. 611, 616, 617, 46 S.Ct. 420, 70 L.Ed. 757.[19] Perhaps a different result is indicated where there is no real contest.[20] But reserving for future decision the question whether this principle will have full application in this area of the ambiguous worker,[21] we may assume that it does and yet we are compelled to reach the conclusion that the Board's award does not foreclose the seaman's damage suit as res judicata or collateral estoppel. This conclusion rests on the legal-fact that the Employer was not really a party.

18. While uniformity of the admiralty ordinarily requires that federally determined maritime principles apply to maritime causes of action without regard to the particular tribunal, a seaman's claim for damages or for maintenance, wages and cure has never been restricted to federal courts. See 45 U.S.C.A. § 56 incorporated in the Jones Act allowing suits in the state courts and cases such as Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, 1959 A.M.C. 1603, discussing the Savings-to-Suitor's clause of the Constitution.

19. This has been applied in FELA v. State Compensation situation by a number of courts. See Temple v. Lumber Mutual Casualty Ins. Co., 3 Cir., 1958, 250 F.2d 748; Wors v. Tarleton, 1936, 234 Mo. App. 1173, 95 S.W.2d 1199, affirmed sub nom. State ex rel. Wors v. Hostetter, 1939, 343 Mo. 945, 124 S.W.2d 1072; Landreth v. Wabash R. R., 7 Cir., 1946, 153 F.2d 98, cert. denied, 1946, 328 U.S. 855, 66 S.Ct. 1345, 90 L.Ed. 1627.

20. See, Hoffman v. New York, New Haven & H. R. R., 2 Cir., 1934, 74 F.2d 227, cert. denied, 1935, 294 U.S. 715, 55 S. Ct. 513, 79 L.Ed. 1248; and Bretsky v. Lehigh Valley R. R., 2 Cir., 1946, 156 F.2d 594.

We may also assume, without deciding, that the evidence offered here before the Industrial Accident Board as between Employer and Employee was such as to make inapplicable the rule applied in these cases.

21. Once the final decision or other authoritative determination of an administrative tribunal is equated with a final judgment of a traditional court (see note 16, supra), one might conclude that in this area the ultimate outcome would depend on which—state or federal—compensation tribunal first acted. But the cases certainly point in the opposite direction. Flowers v. Travelers Ins. Co., 5 Cir., 1958, 258 F.2d 220, 222, 1958 A.M.C. 2420; Newport News Shipbuilding & Drydock Co. v. O'Hearne, 4 Cir., 1951, 192 F.2d 968; Western Boat Building Co. v. O'Leary, 9 Cir., 1952, 198 F.2d 409, 1952 A.M.C. 1639; cf. Calbeck v. Travelers Ins. Co., 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368, 379, 1962 A.M.C. 1413. On them a substantial argument may be marshalled that in this area the most that the earlier decision does is to require proper credit.

In analyzing this conclusion, two things must, of course, be acknowledged. The first is that the Employer did file— and the Board acted on—a formal statement with supporting evidence concerning the Employee's status. Second, the various forms for Notice of Injury, Claim for Compensation have appropriate blanks in which to insert the name of the injured person's employer and the manifold form of the final award is so arranged that the caption shows blank spaces in which to type the name of the "Employee" followed by "vs. Employer" and "insurance carrier." But examination of the structure of the Texas Compensation Act demonstrates that as to the first there is no place for the employer as a real party in the Board's adjudicatory responsibilities and as to the second, the reference to the "employer" in the formal award is purely for identification purposes.

The Texas Act, unlike the usual compulsory schemes, is voluntary in the sense that the only sanction is to deprive an eligible employer of specified common law defenses.[22] Similarly, but more significant here, the obligations to pay compensation, to provide medical attention and other statutory benefits, is imposed solely and directly on the insurance carrier,[23] with no such obligation, direct or indirect, primary or secondary, resting on the employer.[24]

Of course, since it is a scheme to compensate workers (or their beneficiaries) for industrial injuries, the employer does have some important duties in establishing the machinery, setting it in motion and in supplying essential information. Thus, the employer must give notice to his employees and to the Board that he has become a subscriber,[25] must obtain and pay premiums for insurance coverage,[26] the identity of the insurance carrier,[27] and keep and file with the Board written notice of injury.[28]

All substantive obligations to provide benefits to an employee or his beneficiaries are, therefore, imposed solely on the insurance carrier, none on the employer. Consequently, in establishing the Board and prescribing that "[a]ll questions arising under this law, if not settled by agreement of the parties interested therein * * * shall * * * be determined by the Board * * *," [29] this unique statutory scheme confines such "interested parties" to the employee (or death beneficiaries) on the one hand and the insurance carrier on the other. Besides the obvious factor that the employer, as such, has no liability whatso-

22. Art. 8306 §§ 1, 4.

23. The statute uses the term "Association" but this is defined to mean the insurance carrier. Art. 8309 § 1.

24. Art. 8306 § 3: "* * * The employés of a subscriber" or the "representatives and beneficiaries of deceased employés" shall have "no right of action against such subscribing employer." The injured " * * * employés and their representatives * * * shall look for compensation solely to the association [insurance carrier] * * *."

An injured employee " * * * shall be paid compensation by the association * * *." Art. 8306 § 3b. "The association shall furnish such medical aid, hospital * * * nursing * * * services and medicines as * * * required." Art. 8306 § 7; § 7a. " * * * the association shall furnish [the injured] employee with the artificial appliance * * * needed by him * * *." Art. 8306 § 7-e; " * * * [i]f death should result from the injury the association * * * shall pay the legal beneficiaries * * * " the prescribed benefits. Art. 8306 § 8. See the following which impose other specific obligations on the insurance carrier alone: Art. 8306 §§ 9, 10, 11, 12b, 12c, 12c–1, 12c–2, 12e. Also, failure of the association to pay compensation benefits subjects insurance company to forfeiture of right to do business. § 18.

25. Art. 8308 §§ 19, 20; Art. 8309 § 3.

26. Art. 8306 §§ 12g, 12h.

27. Art. 8308 § 18a.

28. Wilful failure to make such reports or to furnish "any information demanded by [the] Board relating to an injury to any employee" subjects the employer to a fine of $1,000. Art. 8307 § 7; see Art. 8309 § 5.

29. Art. 8307 § 5.

ever which the Board can enforce or adjudicate, there is immediate, intrinsic proof that "party interested therein" comprehends only the injured employee as claimant and the insurance carrier. Immediately after the provision just quoted, § 5 goes on to prescribe that "any interested party" may file within 20 days a suit to set aside the award. The section thereafter provides that " * * * the Association and not the employer shall bring suit to set aside said final ruling." (see notes 14, 15). The Texas courts are equally clear that the employer is not a party to the Board adjudication and may not be a party to the trial de novo suit to set it aside.[30]

▬ The case then comes down to one in which the Employer, resourcefully attempting to seize upon the administrative machinery to resolve a burning conflict between it and its own insurance carrier, is asserting that an order in its apparent favor made by a tribunal in a proceeding to which it was not really a party nevertheless forecloses further judicial inquiry as to the critical status of seaman versus that of a mere employee subject to the Compensation Act. Neither the gratuitous intrusion nor the Board's acquiescence in the presence of such outsider gave it any power to make an adjudication between the Employer and any other person. Moreover, at that stage and as between the only two parties to the proceeding—the Employee and the Insurance Carrier—there was no real contest over this issue since both were in agreement on it.[31] As to the only litigants the question was not litigated. And one not a litigant could not make

it so. The bar of res judicata or collateral estoppel fails for want of these essential elements.

The District Court was therefore correct in denying the Employer's motion for summary judgment.[32]

Affirmed.

HUTCHESON, Circuit Judge, concurring in the result.

---

30. Standard Accident Ins. Co. v. Arnold, Tex.Civ.App., 1927, 1 S.W.2d 434; Robertson v. C. A. Bryant Co., Tex.Civ. App., 1939, 127 S.W.2d 549; City of Austin v. Powell, Tex.Civ.App., 1959, 321 S.W.2d 924. Nothing in Southern Surety Co. v. Arter, Tex.Com.App., 1932, 44 S.W.2d 913; Coffey v. Management Co. of Texas, Inc., Tex.Civ.App., 1938, 121 S.W.2d 377; or Southwestern Surety Ins. Co. v. Curtis, Tex.Civ.App., 1918, 200 S.W. 1162 (error Ref'd) pressed so

earnestly by the Employer detracts from this view.

31. See note 20, supra.

32. As the cause now pends for trial on its merits in the District Court, we should emphasize that in assaying this question of res judicata—collateral estoppel, we have not examined the intrinsic merits of the question whether the Employee was, or was not, a seaman under applicable standards. We intimate no opinion on that score.