Ronald James SHOCKLEY, Employee–Petitioner–Appellant,

v.

LACLEDE ELECTRIC COOPERATIVE, Employer–Respondent–Respondent,

and

Federated Rural Electric Insurance Group, Insurer.

No. 17666.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 21, 1992.

Cynthia L. Turley, Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla, for employee-petitioner-appellant.

Raymond E. Whiteaker, Janis L. Prewitt, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for employer-respondent-respondent.

**FLANIGAN, Chief Judge.**

On April 10, 1989, Ronald Shockley filed a claim ["the amended claim"] for workers' compensation with the Division of Workers' Compensation, Department of Labor & Industrial Relations of Missouri. The claim bore the title "First Amended—Previously Closed File." It was based on an accident which occurred on April 9, 1986, causing injuries to Shockley, which arose out of and in the course of his employment for Laclede Electric Coop. On June 11, 1991, the commission entered a "Final Award Denying Compensation." Shockley appeals.

In an earlier proceeding Shockley, on April 29, 1986, filed a claim for compensation benefits based on the April 9, 1986, accident. The employer filed an answer to the claim. On June 8, 1987, Shockley, then 38 and represented by counsel other than his present counsel, and the employer and insurer, also represented by counsel, entered into a "Contract of Compromise and Release" pursuant to § 287.390.[1]

The agreement stated: The parties were operating under and subject to the provisions of Missouri Workers' Compensation Law; compensation had been paid in the amount of $13,562.72; medical aid had been provided in the amount of $10,792.25; there were now disputes between the parties as to whether Shockley suffered from an accident arising out of or in the course of his employment, a dispute as to the nature and extent of the injuries, a dispute as to the causal relationship between the alleged occurrence and the claimed injuries and a dispute as to additional medical expenses; "because of said dispute, it is agreed by said parties to enter into a compromise lump sum settlement under § 287.390 for the amount of a lump sum of $25,631.27, for a total of $39,193.99."

The agreement further stated that Shockley "states that he understands that by agreeing to this settlement, he is forever closing out his claim under the Missouri

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

Workers' Compensation Law, and that he will receive no further compensation or medical aid by reason of this alleged accident, that he has a right to a hearing of his claim and that as a result of such hearing he might receive more money than is provided to him by this settlement and with this understanding he is asking the Administrative Law Judge to approve this settlement."

In the agreement, Shockley's attorney stated that he had fully advised Shockley of his rights under the Missouri Workers' Compensation Law and recommended that the settlement be made. The settlement was approved by an administrative law judge.

In its order of June 11, 1991, denying the amended claim, the commission stated "that it has no jurisdiction to enforce or review the parties' compromise settlement at this juncture. Any relief against the approved settlement can be had only in a court of equity upon proof of fraud or mistake."

"Decisions of the Commission in workers' compensation proceedings that are clearly an interpretation or application of law, as distinguished from a determination of fact, are not binding upon [the court of appeals] and fall within [the appellate court's] province of review and correction." *West v. Posten Const. Co.*, 804 S.W.2d 743, 744[2] (Mo.banc 1991). "The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; . . . ." § 287.495.

Shockley's sole point is that the commission erred in entering the award denying the amended claim and that the award was entered without or in excess of the commission's powers because: (a) the stipulation for compromise settlement was entered in violation of 8 CSR 50–2.010(31) in that the administrative law judge failed to require Shockley to appear in person before approving the proposed settlement; and (b) the award fails "to fully relieve" the effects of the work-related injury, even after settlement or award on hearing, because the award fails to provide for payment for future prosthetic devices as required by § 287.140.

■ For the reasons which follow, this court holds that the commission correctly concluded that the settlement of June 8, 1987, deprived it of jurisdiction to review that settlement and that Shockley's appeal has no merit.

Section 287.390 provides, in pertinent part:

1. Nothing in this chapter shall be construed as preventing the parties to claims hereunder from entering into voluntary agreements in settlement thereof, but no agreement by an employee or his dependents to waive his rights under this chapter shall be valid, nor shall any agreement of settlement or compromise of any dispute or claim for compensation under this chapter be valid until approved by an administrative law judge or the commission, nor shall an administrative law judge or the commission approve any settlement which is not in accordance with the rights of the parties as given in this chapter. No such agreement shall be valid unless made after seven days from the date of the injury or death.

■ Approval of a settlement by the commission or an administrative law judge is a prerequisite to its validity. § 287.-390.1; § 287.610.2; *Sheets v. Hill Brothers Distributors, Inc.*, 379 S.W.2d 514, 517[3] (Mo.1964); *Tokash v. Workmen's Compensation Commission*, 346 Mo. 100, 139 S.W.2d 978, 981–982 (1940).

In *Morgan v. Duncan*, 361 Mo. 683, 236 S.W.2d 281 (1951), the court said, at 284:

[A] final settlement, approved by the Commission as provided in [§ 287.390] is irrevocable and conclusive, and the order of approval is not reviewable. Any relief against the approved settlement can be had only in a court of equity upon proof of fraud or mistake. . . . The order approving a final settlement under [§ 287.-390] is sometimes called an "award," but it is not actually an award in a legal

sense; yet its conclusiveness is quite as absolute as if it were an unappealed-from award, or even as if it were the final judgment of a court.

At 285 the court said:

It is presumed the Commission performed its duty in connection with the settlement by determining that the settlement was "in accordance with the rights of the parties as given in" the Workmen's Compensation Law, including necessarily the finding that the claim was compensable under the Law and the Commission consequently empowered by the Law to approve or disapprove the settlement.

*Morgan* was an action in equity to set aside an order of the commission approving a final settlement of a compensation claim.

 A settlement is made by the parties and is wholly voluntary. The commission has no power to coerce a settlement. It has only a veto power to refuse to approve a settlement already made if the commission deems it not in accordance with the rights of the parties. *Liberty Mut. Ins. Co. v. Jones,* 344 Mo. 932, 130 S.W.2d 945, 959 (1939). A settlement under § 287.-390 is not an award which is subject to review under § 287.470. *State, ex rel. Wors v. Hostetter,* 343 Mo. 945, 124 S.W.2d 1072, 1079–1080 (1938). A settlement, when approved, is the basis of res judicata and estoppel by judgment. *Id.*

 Decisions of the court of appeals are, of course, consistent with the foregoing principles. Any relief from a settlement approved by the commission under § 287.390 can be had only in a court of equity on proof of fraud or mistake. *Ley v. St. Louis County,* 710 S.W.2d 493, 495–496 (Mo.App.1986); *Trokey v. United States Cartridge Co.,* 222 S.W.2d 496, 501[1] (Mo.App.1949); *Mosier v. St. Joseph Lead Co.,* 205 S.W.2d 227, 232[11] (Mo.App. 1947); *Bliss v. Lungstras Dyeing & Cleaning Co.,* 130 S.W.2d 198, 201[3] (Mo.App. 1939). The required showing, in an equity action, is fraud or mistake in the very act of obtaining the order of approval of the compromise. *Ley v. St. Louis County, supra,* at 496. The commission has no power to expound any principle of law or equity. *Bliss v. Lungstras Dyeing & Cleaning Co., supra,* at 201[4]. A settlement, when approved by the commission, is conclusive and irrevocable. *Haase v. New Hampshire Ins. Co.,* 795 S.W.2d 543, 545[3] (Mo.App.1990).

Where, as here, a claimant requests the commission to set aside a compromise settlement previously approved, the commission must reject the request for lack of jurisdiction. *Trokey v. United States Cartridge Co., supra,* at 501[1]; *Mosier v. St. Joseph Lead Co., supra,* at 232[8]. When a settlement is approved, "the jurisdiction of the Commission is exhausted, and the matter is at an end so far as the Commission is concerned." *Mosier,* at 232.

Since the commission properly determined that it had no jurisdiction to question the validity of the settlement of June 8, 1987, approved by an administrative law judge, prong (a) of Shockley's point has no merit.

In support of prong (b), Shockley argues that the order of June 11, 1991, is erroneous "even after settlement" because the award "fails to provide for payment of future prosthetic devices as required by § 287.140.7." The amended claim sought such payment.

Section 287.140.7 reads:

7. The employer may be required by the division or the commission to furnish an injured employee with artificial legs, arms, hands, surgical orthopedic joints, or eyes, or braces, as needed, for life whenever the division or the commission shall find that the injured employee may be partially or wholly relieved of the effects of a permanent injury by the use thereof.

Section 287.140.7 has contained the foregoing language since 1983. Prior to 1983, § 287.140.7 read:

7. The employer may be required by the division or the commission to furnish an injured employee with an artificial leg, foot, arm, hand or brace or artificial eye whenever the division or the commission shall find that the injured employee

may be partially or wholly relieved of the effects of a permanent injury by the use thereof. After the disability has been rated and approved by the division or the commission, the employer shall not be required to furnish any further artificial device.

Shockley's excellent brief advances the following arguments:

"[Section 287.140.7] does not indicate that the order by the division or commission must come prior to any settlement of the permanent partial disability aspects of the case. This statute specifically indicates that the division or the commission can order the employer to pay for these prosthetic devices for the life of the employee *whenever* the division or commission finds that the injured employee may be partially or wholly relieved of the effects of the permanent injury by the use thereof. This change in the statute [deletion of the last sentence of the pre–1983 statute] clearly shows the legislature's intent that the Employer–Insurer can be required to provide prosthetic devices for an Employee *whenever* the division or commission deems the prosthetic devices necessary, even after a settlement has been entered into regarding permanent partial disability. The limitation after rating and approval by the commission was specifically removed—a clear indication of an intent to cover future needs. The compromise settlement approved on June 8, 1987, does not specifically exclude future prosthetic devices. Section 287.140 specifically differentiates between medical treatment and prosthetic devices. The compromise settlement approved on June 8, 1987, only indicates that no future medical treatment will be provided, but does not exclude prosthetic devices. In its Final Award, the Commission equates 'prosthetic devices' with medical aid. However, the legislature has differentiated the two concepts in its wording of § 287.140, RSMo (1986). Medical treatment is covered under subsection 1 and prosthetic devices are covered in subsection 7. If, as the Commission suggests, prosthetics are synonymous with medical treatment, then subsection 7 would be mere surplusage. The rules of statutory construction do not allow such a conclusion."

The employer's excellent brief advances the following arguments:

"By agreeing that he would receive no further compensation or medical aid, [Shockley] is entitled to receive no further benefits from respondents. [Shockley] agreed to foreclose 'his claim under the Missouri Workers' Compensation law, and that he will receive no further compensation or medical aid.' By agreeing that he will not receive further 'compensation' or 'medical aid,' [Shockley] is foreclosed from any prosthesis expenses. It is noted that he seeks monies which must in fact be 'compensation' or 'medical aid.' Prostheses come within both definitions. Under the Workers' Compensation Act, compensation includes medical, surgical and hospital treatment to cure and relieve from the effects of the injury. [Citing *Bryant v. Montgomery Ward & Co.*, 416 S.W.2d 195, 198 (Mo.App.1967).] Medical treatment is a part of the employee's 'compensation.' [Citing *Wiedower v. A.C.F. Industries, Inc.*, 657 S.W.2d 71, 75 (Mo.App.1983), and *Sommers v. Hartford Accident & Indemnity Co.*, 277 S.W.2d 645, 648 (Mo.App. 1955).] Receiving a prosthesis is a part of 'medical aid' which [Shockley] gave up as part of his settlement, but even if it is not, it is clearly a part of the employee's 'compensation' which [Shockley] also expressly relinquished. If medical aid is part of compensation, then even if prosthesis expenses are separate from medical aid, they would still be part of an employee's 'compensation.' 'The term medical aid is broad enough to include nursing services.' [Citing *Balsamo v. Fisher Body Division— General Motors Corp.*, 481 S.W.2d 536, 538 (Mo.App.1972).] If medical aid includes nursing services, then it should also include prostheses expenses."

By entering into the settlement which the administrative law judge approved, Shockley agreed that "he is forever closing out his *claim* under the Missouri Workers' Compensation Law, and that he will receive no further compensation or medical aid by reason of this alleged accident." The

agreement recited that the settlement was entered into "under § 287.390."

In *Mosier v. St. Joseph Lead Co., supra,* the court said, at 233:

Section [287.390] contemplates the settlement of the entire claim and the discharge of the employer's entire liability, and not the splitting up of the claim into component parts, some of which are settled and released, and the others left to be adjudicated by the Commission. As we have pointed out, a compromise settlement under [§ 287.390] is the voluntary act of the parties themselves, with the authority of the Commission limited to the mere approval or disapproval of the settlement already made. Moreover, the Commission must approve the settlement as a whole or disapprove it as a whole; and it has no function to perform with respect to the adjudication of the claim unless, the settlement failing, the matter terminates in an adversary proceeding. Had the parties herein not made a compromise settlement, the case might then have been adjudicated under [§ 287.400],[2] but with a settlement effected under [§ 287.390], the whole of the parties' respective rights and liabilities were disposed of once and for all, and the Commission could thereafter acquire no jurisdiction to act under the provisions of [§ 287.400]. [Citation omitted.]

▮ This court holds that the settlement of June 8, 1987, approved by the administrative law judge, was a settlement of Shockley's entire claim and a discharge of the employer's entire liability, including any liability for prostheses expenses.

The award of the commission denying the amended claim is affirmed.

SHRUM, P.J., and MONTGOMERY, J., concur.

---

**2.** Section 287.400 provides for the filing of a claim to obtain benefits under the Workers'