**Goldie HAASE, Plaintiff/Respondent,**

v.

**NEW HAMPSHIRE INSURANCE COMPANY, Defendant/Appellant.**

**No. WD 42402.**

Missouri Court of Appeals,
Western District.

July 24, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1990.

Application to Transfer Denied
Oct. 16, 1990.

John B. Rathmel, Patricia A. Wohlford, Turner and Boisseau, Kansas City, Mo., for defendant/appellant.

J. Kirk Rahm, Rahm, Rahm, Koenig & Courtwright, Warrensburg, Mo., for plaintiff/respondent.

Before TURNAGE, P.J., and
LOWENSTEIN and GAITAN, JJ.

TURNAGE, Presiding Judge.

Goldie Haase filed a declaratory judgment suit against New Hampshire Insurance Company to resolve the question of subrogation under the Workers' Compensation Law in the proceeds of a settlement made by Goldie for the death of her husband, Robert. The court held that New Hampshire had subrogation rights only in the amount of $6,488.40. New Hampshire appeals and contends that it is entitled to subrogation rights for the full amount it paid to settle Goldie's Workers' Compensation claim for the death of her husband. Reversed and remanded.

Robert was employed by the Sedalia Fruit Company. On February 10, 1988, Robert was at the City Market in Kansas City when he was struck by a truck and killed. New Hampshire was the insurance carrier for Sedalia Fruit for the coverage of Workers' Compensation. Goldie made claim for death benefits as a result of the death of Robert and New Hampshire paid weekly death benefits of $224.42 for 20 weeks. In addition, New Hampshire paid the funeral benefit of $2,000.00.

Thereafter, Goldie, Sedalia Fruit, and New Hampshire entered into a Workers' Compensation settlement agreement and release. In that agreement Sedalia Fruit and New Hampshire agreed to pay Goldie, or her heirs, $973 per month ($11,676 per year) for 10 years. In the event Goldie lived longer than 10 years the same payment was guaranteed for as long as she lived. It was agreed among the parties that the payment to Goldie, or her heirs, would be funded by the purchase of an annuity policy to be issued by AI Life Assurance Company. New Hampshire and

Sedalia Fruit paid AI $115,564 as the premium for the annuity.

The settlement between Goldie and Sedalia Fruit and New Hampshire was submitted to an administrative law judge of the Division of Workers' Compensation and was approved pursuant to § 287.390.1, RSMo 1986.[1] The settlement agreement and release stated in part:

> Without admitting liability for additional compensation, rehabilitation, medical or any other benefits, the employer and carrier above-named agree to pay in consideration in full and final settlement and compromise of all Workers' Compensation benefits claimed and Workers' Compensation claims whether known or unknown, claimed or claimable to the employee or his dependants and to which the employee may or his dependants may be entitled as a result of an accidental injury resulting in death he sustained while in the employ of the employer the following benefits to the dependant.

Goldie further agreed to dismiss her claim for Workers' Compensation with prejudice.

After the settlement had been approved Goldie pursued a claim against the party causing the death of Robert. That claim was later settled by the payment to Goldie of $260,000.

This dispute arose when New Hampshire claimed that it was entitled to recover from Goldie a proportionate share of the total of $122,052.40 it had paid from the amount Goldie recovered from the party causing Robert's death. New Hampshire's claim was founded on the subrogation rights given to the employer under § 287.150.2. When the parties could not agree, Goldie filed a declaratory judgment action with the result that the trial court held that New Hampshire was entitled to subrogation only for the $6,488.40 which it had paid to Goldie as weekly benefits and funeral allowance prior to the settlement entered into by Goldie, Sedalia Fruit and New Hampshire. The court held that New Hampshire was not entitled to subrogation

in the $115,564 paid for the annuity because Goldie had waived her rights under the Workers' Compensation Law in exchange for the payment to be made by the annuity.

New Hampshire contends that its subrogation rights encompass the entire $122,052.40 because that was the amount which New Hampshire paid to Goldie pursuant to the Workers' Compensation Law.

■ Goldie contends the annuity payment by New Hampshire to AI was not paid to her and was not paid pursuant to the Workers' Compensation Law. Goldie contends that she waived all of her rights under the Workers' Compensation Law and dismissed her Workers' Compensation claim when she entered into the settlement and, therefore, any amount paid to her by New Hampshire pursuant to the settlement was without the Workers' Compensation Law.

■ Goldie's argument is answered in large part by § 287.390.1 which provides that "no agreement by an employee or his dependents to waive his rights under this chapter shall be valid...." Goldie was prohibited from waiving her rights under the Workers' Compensation Law and, therefore did not do so by the settlement and release. The dismissal of her claim should be viewed only as signifying that she and Sedalia Fruit and New Hampshire had settled all questions relative to Goldie's claim for benefits. Further, § 287.390.1 specifically allows for an agreement of settlement or compromise of any dispute or claim for Workers' Compensation provided the settlement is approved by an administrative law judge. Section 287.390.1 also provides that such settlement shall not be approved if it is not in accordance with the rights of the parties as given in Chapter 287. Thus, the administrative law judge was required to find, and did so, that the settlement was in accordance with the rights of Goldie and New Hampshire as given by the Workers' Compensation Law.

Section 287.390.1 makes it abundantly clear that Goldie could not waive her rights

---

**1.** All sectional references are to RSMo 1986.

under the Workers' Compensation Law but she could make a settlement of her claim for Workers' Compensation benefits accruing on the death of her husband. The conclusion is inescapable that the settlement was made in return for the agreed payment as Workers' Compensation benefits. That the settlement was for all of Goldie's claims under the Workers' Compensation Law is clearly spelled out in the settlement agreement and release. Indeed, there is no other reason for the settlement and release except for Goldie's claim for Workers' Compensation benefits for the death of her husband. The dismissal of her claim came only after the agreement to pay Goldie. Goldie now contends that with the dismissal of her claim, there was no Workers' Compensation claim pending and the payments to her are therefore not under the Workers' Compensation Law. Goldie offers no explanation for the agreement to pay her for 10 years and beyond that for life if New Hampshire were not paying her Workers' Compensation benefits. The only other explanation would be a gift, but Goldie does not urge that theory.

Goldie further contends that the annuity payment cannot be considered as having been paid under the Workers' Compensation Law because the payment was to AI instead of Goldie. This argument overlooks the fact that Goldie was the beneficiary of the annuity and was to receive the payment from AI for at least 10 years, and if she lived longer than that, for the rest of her life. AI paid Goldie only because New Hampshire had paid the premium for the annuity. Thus, the amount Goldie received was paid by New Hampshire. Further, Sedalia Fruit and New Hampshire agreed in the settlement that they would remain fully liable to Goldie for the payments provided in the settlement even if AI defaulted on its obligation. Thus, Sedalia Fruit and New Hampshire did not abandon their obligation to Goldie under the Workers' Compensation Law, but bound themselves to be fully liable for the payments which the settlement provided Goldie was to receive.

Goldie further makes some argument that § 287.241 provides for a structured settlement for the payment of different weekly death benefits than provided in § 287.240. The settlement agreement in this case was not made pursuant to § 287.241 which provides only for a different weekly benefit and requires no approval by an administrative law judge. The settlement here was made pursuant to § 287.390.1 which settled the entire question of the liability of Sedalia Fruit and New Hampshire to Goldie for Workers' Compensation benefits payable on the death of her husband.

No case has been cited or located in which an employer and its insurer have settled a claim for Workers' Compensation benefits by the purchase of an annuity. Even so, there is nothing in the authority granted in § 287.390.1 for a settlement of claims for Workers' Compensation benefits which would preclude a funding of a settlement by the purchase of an annuity agreement. Especially is this so when the employer and its insurer bind themselves to remain fully liable for the payment agreed to be made which is funded by the purchase of an annuity. The settlement agreement must be approved by an administrative law judge, or the commission, and it must be found that the settlement is in accordance with the rights of the parties granted by Chapter 287. This is the safeguard which the law gives to the claimants or their dependents. So long as the requirements of § 287.390.1 are observed, there is nothing to prevent an employer and its insurer from entering into a settlement which provides for payments from an annuity purchased by the employer or insurer.

■ It was held in *Mosier v. St. Joseph Lead Co.*, 205 S.W.2d 227, 233[12] (Mo.App. 1947), that when a settlement is approved it becomes conclusive and irrevocable. Thus, the policy of the law is to encourage settlement of claims of Workers' Compensation benefits and to make conclusive and irrevocable such settlements once they are approved. Here, when Goldie settled her claim for Workers' Compensation, the settlement became conclusive. Thus, it is conclusive that Goldie is receiving payment under the Workers' Compensation Law.

The parties agree that if the annuity payment is considered as a payment to Goldie under the Workers' Compensation Law that New Hampshire is entitled to subrogation for its proportion of $122,052.40 out of the $260,000 recovery made by Goldie. Calculation under the formula approved in *Ruediger v. Kallmeyer Brothers Service*, 501 S.W.2d 56, 59[1, 2] (Mo. banc 1973), results in New Hampshire being entitled to $81,368.26 ($260,000 recovery less $86,666.67 attorney fees and costs = $173,333.33 net recovery, $122,052.40 divided by $260,000 = .4694323, $173,333.33 × .4694323 = $81,368.26). The judgment is reversed and this cause is remanded with directions to enter judgment in favor of New Hampshire and to award New Hampshire judgment in the amount of $81,368.26 to be paid from the sum being held in escrow pending the resolution of this case.

All concur.