Tina BALL–SAWYERS, Respondent,

v.

**BLUE SPRINGS SCHOOL DISTRICT, Appellant,**

**Treasurer of the State of Missouri– Custodian of the Second Injury Fund, Respondent.**

No. WD 69624.

Missouri Court of Appeals, Western District.

May 5, 2009.

---

Thomas R. Hill, Kansas City, MO, for appellant.

William C. Spooner, Kimberly Fournier, Kansas City, MO, for respondent.

Before: DIVISION ONE–RONALD R. HOLLIGER,[1] Presiding Judge, HAROLD L. LOWENSTEIN and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

This case arises from a final decision of the Labor and Industrial Relations Commission awarding permanent total disability benefits to Tina Ball–Sawyers and imposing a penalty against the Blue Springs School District (District) and Hartford Underwriters Insurance (Hartford) for failing to comply with an order to pay for Ms. Sawyers's medical treatment. On appeal, the District and Hartford contend the benefit award is against the weight of the evidence, and the Commission erroneously applied the law in determining the penalty. For reasons explained herein, we reverse the penalty determination and affirm the Final Award in all other respects.

FACTUAL AND PROCEDURAL HISTORY

Ms. Sawyers began working for the District as a bus driver in 1995 at the age of thirty-four. She drove a sixty-five passenger school bus approximately six to seven hours a day on various routes, primarily on city streets. The bus was equipped with a standard driver's seat consisting of a padded top mounted to a metal pole bracing it to the frame of the vehicle.

In late 1997, Ms. Sawyers began to experience lower back and right leg pain. She went to her primary care physician, Dr. Charles McGrath, for treatment. He found a posterior displacement of the L5–S1vertebra in her lower back and radicular leg pain. Dr. McGrath prescribed epidural steroid injections, which provided some relief. When Ms. Sawyers continued to seek treatment in January 1998, Dr. McGrath recommended that she consider a more sedentary job given her age (thirty-six) and her complaints. He released her to return to work. Despite continuing and worsening pain, Ms. Sawyers drove two more years without further medical treatment.

Upon Dr. McGrath's recommendation, Ms. Sawyers sought chiropractic help for her back pain in 2000. She also sought treatment from Dr. McGrath for complaints of numbness and tingling in her upper extremities. She eventually had bilateral carpal tunnel releases performed. She returned to work and was able to perform her duties.

On or about March 21, 2001, Ms. Sawyers experienced immediate back pain while getting out of her bus. Dr. McGrath

1. Judge Holliger was a member of the court when this case was submitted but has since retired from the court.

recommended an MRI, which revealed a herniated disk and degenerative disk disease. He referred Ms. Sawyers to Dr. Daniel Downs, an orthopedic surgeon in March 2001. Dr. Downs took x-rays and prescribed narcotic pain medication. He opined that the source of Ms. Sawyer's low back complaints was her job as a school bus driver and advised her not to return to work. Ms. Sawyers's last day on the job was March 21, 2001.

On March 26, 2001, Ms. Sawyers filed a workers' compensation claim alleging accidental injury arising out of an occupational disease to her lumbar spine. She requested disability benefits and medical care and treatment from the District. In August 2001, she also applied for social security disability to help cover her medical expenses.

Ms. Sawyers's symptoms worsened throughout 2001, and she unsuccessfully sought relief through physical therapy, medication, exercise, and limitations on physical activities. On December 12, 2001, Dr. Downs rated Ms. Sawyers totally disabled and pronounced her unable to return to work.

At the request of the District's insurance carrier, Hartford, Ms. Sawyers was seen for an independent medical examination on January 14, 2002, by Dr. David Ebelke. He opined that her back pain was due to her preexisting degenerative disk disease and not causally related to her bus driving activities.

Ms. Sawyers was awarded total disability benefits by the Social Security Administration on March 22, 2002. She also sought and received Medicare benefits.

In April 2002, Ms. Sawyers saw Dr. Downs for a discography, which was positive at the L4–5 and L5–S1 levels. A CT scan revealed a moderate sized focal disc protrusion at the L4–5 level with a midline tear in the annulus fibrosis. Severe desiccation with multiple annular tears were seen at the L5–S1 level.

After a hardship hearing on her workers' compensation claim in August, 2003, the Administrative Law Judge (ALJ) found Ms. Sawyers had sustained an occupational disease as a result of "repetitive trauma to her back" during her employment with the District. The ALJ awarded her temporary total disability (TTD) benefits in the amount of $35,001.27 from March 21, 2001, to the date of the award on September 3, 2003, and ordered the District to provide Ms. Sawyers with future TTD benefits and medical treatment as necessary. The Commission affirmed the temporary award on February 14, 2004.

After the hearing, Ms. Sawyers was examined by Dr. Ira Fishman, a D.O. of Physical Medicine and Rehabilitation. He concluded that her back condition required permanent work restrictions, which included the opportunity to change between sitting and standing as needed to relieve her pain and occasional lifting of no more that twenty pounds.

Dr. Downs referred Ms. Sawyers to Dr. Alexander Bailey, an orthopedic surgeon specializing in spine surgery. Based on a new MRI and the severity of the results, Dr. Bailey performed a two-level diskectomy and fusion at the L4–5 and L5–S1 levels on August 10, 2004. Ms. Sawyers continued to treat with Dr. Bailey through August of 2005. At the time of the final hearing, she had obtained some relief from her leg pain and numbness, but still suffered from low back pain and was being seen by Dr. McGrath for pain management.

At the final hearing on April 11, 2007, Ms. Sawyers testified to current symptoms of constant back pain, with levels fluctuating daily. She continued to experience

some numbness in her right leg. She estimated her tolerance for sitting or standing to be about thirty minutes to an hour. Her activities were greatly curtailed, and she found it necessary to lay down several times a day to relieve her pain. She was on daily narcotic pain medication.

Three physicians, Dr. Downs, Dr. P. Brent Koprivica, and Dr. McGrath, all testified that Ms. Sawyers's work activity of driving a school bus represented a substantial factor contributing to her disability. The medical experts agreed that her back pain was caused by the daily experience of being jarred and bounced around on a hard bus seat during a period of more than six years. Because of her need to lay down periodically during the day and the constant need to change positions, Mark Dreiling, a vocational expert, testified that Ms. Sawyers was not a viable candidate for the open labor market. Mr. Dreiling concluded she was totally disabled.

The ALJ found Ms. Sawyers to be permanently and totally disabled (PTD) as a result of her employment as a bus driver and ordered the District to provide future PTD benefits and medical treatment. The ALJ determined that the District had not paid $176,127.90 in medical expenses incurred by Ms. Sawyers following the temporary award. The ALJ also noted that the District did not begin paying TTD benefits until more than seven months after the temporary award was entered. Citing Section 287.510,[2] the ALJ applied a $236,189.90 penalty for noncompliance by doubling the amount of medical expenses and TTD benefits incurred. The ALJ awarded Ms. Sawyers a total payment of $436,285.81 for accrued PTD benefits, unpaid medical expenses, and penalties due to the District's deliberate and intentional disobeying of the temporary award.[3]

The Commission issued a final award affirming and incorporating the ALJ's decision on April 3, 2008. The District and Hartford appeal.

## STANDARD OF REVIEW

■ This court will not disturb the decision of the Commission on appeal unless it acted without or beyond its power, the award was procured by fraud, the facts do not support the award, or the award is not supported by sufficient competent evidence in the record. § 287.495.1. "We examine the whole record to determine the sufficiency of the evidence." *Marmon v. City of Columbia*, 129 S.W.3d 921, 924 (Mo.App.2004). If we find the award is contrary to the overwhelming weight of the evidence, then it is not supported by substantial evidence and we must reverse it. *Id.*

## PERMANENT TOTAL DISABILITY DETERMINATION

Appellants contend there is no substantial evidence to support the Commission's finding that Ms. Sawyers was permanently and totally disabled as a result of her work activities as a bus driver because: (1) she had degenerative disk disease that was not developed from driving a school bus; and (2) the last injury alone did not cause her to be permanently and totally disabled, so

2. All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted.

3. The breakdown of compensation in the Final Award is as follows:

| | |
|---|---|
| Unpaid medical expenses | $ 176,127.90 |
| TTD awarded from 3/21/01-4/20/05 | 60,062.00 |
| Doubling of Temporary Award (TTD & medical expenses) | 236,189.90 |
| PTD awarded from 4/21/05-4/10/07 | 28,980.11 |
| Credit for TTD already paid | (65,074.10) |
| Total Compensation | $ 436,285.81 |

the Second Injury Fund should have been assessed.

### Occupational Disease

■ In Point I, Appellants argue there was insufficient evidence to establish that Ms. Sawyers developed an occupational disease as a result of her job as a school bus driver. They contend she suffered from pre-existing degenerative disk disease and there was little proof that her employment was a substantial factor in aggravating that condition to the extent that it became a compensable injury. Appellants point to Ms. Sawyers's testimony regarding her typical schedule. She would drive to her job at approximately 6:00 a.m. and transport children until about 9:30 a.m. She would then have a three hour break when she would go home and perform household chores or take a nap. She would resume her driving duties from 12:30 to 1:00 p.m. and then repeat her morning route from 1:30 until 4:45 p.m.

Appellants note that Ms. Sawyers was subjected to yearly Department of Transportation physical examinations where she failed to mention any problems with her back and leg. Her initial visits to Dr. McGrath make no mention of her activities as a bus driver having any causal connection to her complaints. Early electronic diagnostic studies found her right lower extremity and lumbar muscle group were within normal functioning limits. Ms. Sawyers was released from any treatment in January 1998 and continued to work for two years as a bus driver without any medical intervention. In 2001, she was diagnosed with degenerative disc disease of the lumbar spine, for which she eventually received surgical treatment in 2005.

The District and Hartford assert this collective evidence does not support a finding of an occupational back injury. Ms. Sawyers drove approximately sixty-seven miles a day, the equivalent of about three hours of drive time. She traveled on paved city streets and had a three hour break every morning where she was able to go home and take a restful nap. Additionally, Dr. Ebelke, a respected spine surgeon, testified there was no such thing as a "repetitive use syndrome" for the spine as there might be for carpal tunnel injuries.

■ Ms. Sawyers had the burden to prove all essential elements of her claim, including a causal connection between her injury and her job. *Royal v. Advantica Rest. Group, Inc.*, 194 S.W.3d 371, 376 (Mo.App.2006). An occupational disease is compensable if it is clearly work-related. § 287.067.2. "An injury is clearly work related if work was a substantial factor in the cause of the resulting medical condition or disability." § 287.020.2. Generally, "[a]n injury is not compensable merely because work was a triggering or precipitating factor." *Id.* However, benefits may be awarded for such triggered or precipitated injuries if the employee demonstrates that work is a "substantial factor" in causing the medical condition. *Royal*, 194 S.W.3d at 376. Questions of causation and work-relatedness are questions of fact for the Commission. *Id.* This court must defer to the Commission's assessment of witness credibility and is bound by the Commission's factual determinations even when the evidence supports either of two opposing findings. *Higgins v. Quaker Oats Co.*, 183 S.W.3d 264, 270–71 (Mo.App. 2005).

Appellants' argument that Ms. Sawyers's job duties as a bus driver could not have caused her back injury ignores much of the evidence relied upon by the experts and the Commission. Ms. Sawyers had no back injury prior to beginning her work as a bus driver in September 1995. She sat on a seat with minimal (three to four inches) cushioning supported by a steel pole aligned directly under her spine. She

sat in this seat for six or seven hours every day, five days a week for more than six years. Ms. Sawyers described the jarring that occurred each time the bus hit a pothole or speed bump and the impact on her spine. She was first diagnosed with degenerative disk disease in the spring of 2001, six years *after* she began working for the District.

Three different physicians testified that the bouncing and jarring Ms Sawyers experienced as a bus driver was a substantial factor in the cause or aggravation of her degenerative disk problems:

(1) Dr. Downs, a board certified orthopedic surgeon and treating physician to Ms. Sawyers, testified, "It's usually a combination of things that cause disogenic injury. And her work activities are a significant contributing factor.... The bouncing, the twisting movements, she was in a seat that does not have a lot of cushioning or shock absorbing characteristics or capabilities and the vibratory stresses are a significant issue with discogenic problems."

(2) Dr. Koprivica, a board certified medical doctor specializing in occupational medicine and occupational related diseases stated in his final report: "I continue to believe that Ms. Sawyers's work activities as a bus driver, particularly the whole body vibration and jarring associated with the operation of the bus, represent a substantial factor contributing to the aggravation of degenerative disk disease with the development of diskogenic pain at L4–5 and L5–S1." He further testified that Ms. Sawyers's medical history and work history are consistent with epidemiologic studies finding a positive association between whole body vibration and the development of progressive back pain.

(3) Finally, as early as January 1998, Dr. McGrath, Ms. Sawyers's family physician, expressed concern about her job duties causing or exacerbating her low back symptoms.

The only countervailing medical testimony was that of Dr. Ebelke who saw Ms. Sawyers on one occasion for a medical causation opinion requested by the District and Hartford. The ALJ's decision discounted Dr. Ebelke's opinion because he acknowledged that he failed to ask the claimant a single question about her job or her duties, as he felt they were irrelevant to his opinion that she suffered from degenerative disk disease. We must defer to this credibility determination as it is supported by the record.

Appellants also noted Ms. Sawyers failed to complain of low back pain during her annual physicals for the Department of Transportation. Ms. Sawyers testified she failed to mention her back pain because she needed to work and could not afford to be released. She also testified the physicals were of the superficial type, where ears, throat, and eyes were checked and drivers gave a urine sample for testing.

Finally, Appellants argue the school children who rode with Ms. Sawyers experienced the same trauma from riding the school bus and should also be showing signs of back injury. Ms. Sawyers testified the seats for the passengers were different from the driver's seat. Additionally, the children would not have been exposed as many hours in the day, nor would they have been exposed for as many years. We find no merit to this contention.

Based on the totality of evidence, we find no error in the Commission's determination that Ms. Sawyers's duties as a bus driver were a substantial factor in causing her lumbar spine condition. Point I is denied.

### Second Injury Fund

■ In Points II and III, the District and Hartford argue the Commission

should not have found Ms. Sawyers permanently and totally disabled as a result of the "last injury" alone. The "last injury" occurred on or about March 21, 2001, when Ms. Sawyer experienced immediate back pain while exiting the bus. Appellants suggest that the Second Injury Fund should be responsible for at least a portion of the benefit compensation due to Ms. Sawyers's pre-existing injuries. They point to two factors as evidence of a pre-existing back condition: (1) Dr. Koprivica assessed Ms. Sawyer with a disability rating of 12.5% in October 2000, five months before the "last injury" occurred; and (2) none of the medical experts testified that Ms. Sawyer was PTD due to her back injury in isolation.

Section 287.220 guides the Commission in determining when there is a previous disability that may be compensable from the Second Injury Fund. The Commission must first determine the degree of disability from the last injury alone. *Mihalevich Concrete Constr. v. Davidson*, 233 S.W.3d 747, 754 (Mo.App.2007). Preexisting disabilities are not relevant until this determination is made. *Id.* If the last injury standing alone rendered Ms. Sawyers PTD, then the Second Injury Fund has no liability and the District is responsible for all of the compensation. *Id.*

The degree of disability is established by reviewing the medical restrictions and expert opinions. The question of whether Ms. Sawyers is PTD is determined based on whether she is able to compete in the open labor market with the indicated restrictions. *Forshee v. Landmark Excavating & Equip.*, 165 S.W.3d 533, 537 (Mo.App.2005). The critical question is whether an employer could reasonably be expected to hire Ms. Sawyers given her physical condition and the expectations of the job. *Id.* Ms. Sawyers's credible testimony concerning work-related functioning can constitute competent and substantial evidence. *Id.*

In this instance, the Commission concluded that Ms. Sawyers's PTD was based upon multiple factors, all of which relate directly to her job as a bus driver. While it is true, as the District asserts, that all of the medical doctors considered Ms. Sawyers potentially employable upon viewing her back injury in isolation, all placed significant restrictions on her workplace activities; and Dr. Koprivica specifically deferred to an assessment by a vocational expert to determine the likelihood that she could sustain employment.

The significant medical restrictions pose a formidable challenge for Ms. Sawyers in the labor market. For example, Dr. Fishman restricted her from prolonged walking, standing, and sitting as well as frequent bending, stooping, kneeling, and squatting. He limited her lifting to twenty pounds and recommended that she be allowed to rotate between sitting and standing on an as-needed basis. Dr. Koprivica imposed similar restrictions, adding that because Ms. Sawyers had to lay down periodically during the day to relieve her back pain, such a requirement was likely sufficient, standing alone, to prevent her from working. Notably, even Dr. Ebelke, the District's medical expert, recommended that Ms. Sawyers find a different line of work as she was unable to tolerate her bus driving responsibilities due to her back condition.

The ALJ also made extensive findings about the narcotic medications Ms. Sawyers was taking due to her constant back pain and inability to sleep. At the time of the final hearing, Ms. Sawyers was taking Vicodin, Flexiril, and 800 mg. of Ibuprophen for pain, and Welbutrin for depression. These medications made her sleepy and adversely affected her ability to concentrate. Based on the expert testimony,

the ALJ concluded that these prescriptive medications would negatively impact Ms. Sawyers's employment prospects.

Finally, the extensive testimony of the only vocational expert, Mark Dreiling, clearly established that he considered Ms. Sawyers to be PTD due to a combination of factors, all arising from her back trauma, including: (1) the ongoing pain and medical difficulties she was experiencing with her degenerative disk condition; (2) her need to alternate between sitting and standing every fifteen to twenty minutes due to low back pain; and (3) her ongoing narcotic pain medication consumption. He also noted that Ms. Sawyers does not have a high school diploma and lacks the physical ability to pursue further training for a new vocation.

In order to trigger Second Injury Fund liability, Appellants needed to identify any preexisting disabilities and show how those disabilities represented an obstacle or hindrance to Ms. Sawyers's ability to work prior to her employment with the District. The record reflects only that Ms. Sawyers suffered from and was treated for carpal tunnel syndrome in 2000, five years after she went to work for the District. Significantly, Ms. Sawyers went back to work and was able to continue working until her low back injury disabled her. She was not diagnosed with degenerative disk disease until 2001, and there is nothing in the record to suggest that her back condition ever affected her ability to work prior to the time she began her employment with the District as bus driver in 1995.

There was substantial and competent evidence from which the Commission could conclude that Ms. Sawyers was PTD as a result of her low back injury by itself and that the injury occurred in the course of her employment with the District. Accordingly, the Commission did not err in concluding the Second Injury Fund had no liability. Points II and III are denied.

### DOUBLE PENALTY DETERMINATION

■ In Point IV, Appellants argue the Commission erred in assessing and calculating the double penalty under Section 287.510, RSMo Cum.Supp.2008, which provides:

> In any case a temporary or partial award of compensation may be made, and the same may be modified from time to time to meet the needs of the case, and the same may be kept open until a final award can be made, and if the same be not complied with, *the amount equal to the value of compensation ordered and unpaid may be doubled* in the final award, if the final award shall be in accordance with the temporary or partial award.

(Emphasis added.)

As reflected in the Final Award affirming the ALJ's decision, the Commission imposed a penalty of $236,189.90 due to the District's and Hartford's failure to comply with the temporary order requiring payment of Ms. Sawyers's medical expenses and the seven-month delay in paying her TTD benefits. The penalty was calculated by doubling the amount of the medical expenses, $176,127.90, and the TTD benefits of $60,062.00. Appellants contend no penalty should have been assessed on the TTD because the District and Hartford paid TTD benefits of $65,074.10, and Section 587.210 only allows a penalty on "the amount" of the award that is "unpaid." Appellants also assert the Commission improperly doubled the medical expenses because the temporary order did not award Ms. Sawyers a specific *amount* of medical expenses. The temporary award merely ordered the District and Hartford to provide "additional medi-

cal care as required to cure and relieve Employee's symptoms."

Ms. Sawyers argues the prior version of Section 287.510 is applicable because the 2005 changes to the statute were substantive and cannot be applied retroactively to her workers' compensation claim. Under the prior version, "the amount [of the temporary award] may be doubled in the final award[.]" § 287.510. But, under the 2005 amended version, "the amount equal to the value of the compensation ordered and unpaid may be doubled in the final award[.]" § 287.510, RSMo Cum.Supp. 2008.

Ms. Sawyers contends the Commission correctly doubled her entire temporary award by applying the prior version of Section 287.510 because her workers' compensation claim was filed in 2001, before the 2005 amendment became effective. She acknowledges her compensation would be significantly reduced under the amended statute because only an amount equal to the unpaid balance could be doubled.

Appellants assert that the amended statute is a procedural change that has retroactive application. They contend it addresses the procedure to be followed if a temporary award is issued and there is non-compliance with that award. Ms. Sawyers, they argue, has no "vested right" as the amended statute does not affect the nature of permanent partial disability or permanent total disability.

In determining which version of Section 287.510 is applicable, the analysis in *Lawson v. Ford Motor Co.*, 217 S.W.3d 345 (Mo.App.2007), is instructive. As in the present case, Ms. Lawson filed her workers' compensation claim well before the 2005 amendments to the statutes. The court noted that prospective application of a statute is presumed unless the legislature demonstrates a clear intent to apply the amended statute retroactively, or if the statute is procedural or remedial in nature. *Id.* at 349. Just as the *Lawson* court found no specific intent on the part of the legislature to apply the amended provisions retroactively, the Appellants do not argue, nor do we find, such intent under the provisions at issue here. Thus, we must consider whether the amendments affect substantive rights or procedural remedies.

Substantive laws are those relating to or affecting the rights and duties which give rise to a cause of action, while procedural or remedial laws relate to the machinery used for carrying on the suit. *Mo. Nat'l Educ. Ass'n. v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 284 (Mo.App.2000). "Substantive laws fix and declare primary rights and remedies of individuals concerning their person or property, while remedial statutes affect only the remedy provided, including laws that substitute a new or more appropriate remedy for the enforcement of an existing right." *Files v. Wetterau, Inc.*, 998 S.W.2d 95, 97 (Mo.App. 1999).

Missouri courts have interpreted statutes that affect a measure of damages as remedial and applied them retroactively. *See In re Estate of Pierce*, 969 S.W.2d 814 (Mo.App.1998); *Leutzinger v. Treasurer of Mo. Custodian of the Second Injury Fund*, 895 S.W.2d 591 (Mo.App.1995). The facts and issues here are remarkably similar to those in the *Pierce* case. The cause of action and the rights afforded to Ms. Sawyers under the prior and amended versions of Section 287.510 are the same: she has the right to pursue disability benefits and medical treatment for her work-related injury. Thus, her substantial right to redress has been preserved. *Pierce*, 969 S.W.2d at 823. The only difference between the two versions of Section 287.510 is the remedy available. Ms. Sawyers is

still entitled to pursue her workers' compensation claim under the amended version, but the Commission only has discretion to double the unpaid portions of the temporary award, rather than the total award. The amended statute has substituted a new remedy for the enforcement of Ms. Sawyers's existing right. The statute is, therefore, remedial and retroactively applicable to this proceeding. *Id.*

The Commission erred in applying the penalty in the prior version of Section 587.210 by doubling the entire amount of the temporary award. Under the amended statute, the double penalty can be imposed only on the amount of the temporary award that was unpaid. At the time of the final hearing in 2007, the only part of the temporary award that the District and Hartford had not paid was Ms. Sawyers's medical expenses. Accordingly, the double penalty is solely applicable to those expenses.

We find no merit to Appellants' argument that the double penalty cannot be imposed on the medical expenses because the temporary order did not specify the amount of expenses to be paid. The amendment reflects a legislative intent that such detailed specification is not necessary by declaring that "the amount *equal to the value of the compensation ordered* and unpaid" can be doubled. § 587.510, RSMo Cum.Supp.2008. Pursuant to the temporary order, the District and Hartford were ordered to pay Ms. Sawyers's medical expenses. The Appellants did not pay the expenses, and the Commission determined that the *value* of the unpaid expenses was $176,127.90. Based on that determination of value, the Commission had authority to impose a double penalty on the unpaid medical ex-

penses under Section 587.510, RSMo Cum. Supp.2008.

### CONCLUSION

The Commission's Final Award is reversed with regard to the penalty imposed for the District's and Hartford's non-compliance with the temporary award. Pursuant to Rule 84.14, we impose the proper penalty by doubling the amount of unpaid medical expenses and ordering the District and Hartford to pay the penalty amount of $176,127.90.[4] In all other respects, the Commission's Final Award is affirmed.

All Concur.

---

**4.** The Final Award ordered the District and Hartford to pay the medical expenses of $176,127.90. Thus, the penalty doubles that amount by requiring payment of an additional $176, 127.90.