**TREASURER OF THE STATE OF MISSOURI–CUSTODIAN OF THE SECOND INJURY FUND, Appellant,**

v.

**Donald STECK, Respondent.**

**No. WD 73110.**

Missouri Court of Appeals,
Western District.

May 31, 2011.

Charles L. Clark, Jr., Jefferson City, MO, for appellant.

Randall O. Barnes, Jefferson City, MO, for respondent.

Before Division Two: JAMES M. SMART, JR., Presiding Judge, MARK D. PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

The Treasurer of the State of Missouri, Custodian of the Second Injury Fund, ("Second Injury Fund") appeals from the Labor and Industrial Commission's ("Commission") workers' compensation award granting permanent total disability benefits to Donald Steck ("Steck"). The Second Injury Fund claims that the Commission's award was not supported by sufficient competent evidence in that Steck is permanently and totally disabled *solely* as a result of the injury, which occurred on November 16, 2007, and not due to a combination of that injury with a prior injury. We affirm.

### Factual and Procedural History

On November 16, 2007, Steck sustained an injury (the "2007 Injury") to his lower back while working as a maintenance man for Bluewood, Inc., d/b/a Broadmoor Apartments, when Steck picked up and

moved a paint spray machine, its attached hose and spray gun, and a half-full five-gallon bucket of paint. Steck placed the equipment in his truck, drove to another apartment building, and then carried the equipment down a flight of stairs to another apartment. Within fifteen minutes, Steck experienced a stabbing pain in his lower back on his left side. Steck reported the injury to his employer the same day but continued working the rest of the day. Over the next several days, the pain worsened to the point that Steck could not sleep. Steck continued to report to work. Steck's employer never sent Steck to a doctor. On November 24, 2007, Steck sought treatment from Dr. Jack Dodson ("Dr. Dodson"). Dr. Dodson referred Steck to Dr. Karl Haake ("Dr. Haake") whom Steck saw on a regular basis. Steck's pain worsened further. The only thing that helped Steck's pain was valium and vicodin. Steck was eventually referred to Dr. John Spears ("Dr. Spears") who performed a micro-decompression surgery on Steck's back in 2008. The surgery relieved Steck's pain, which radiated from his back into his leg but not the actual back pain. In February 2009, Steck reached maximum medical improvement. Steck has not worked since the 2007 Injury.

On February 7, 2008, Steck filed a workers' compensation claim. Steck also filed a claim against the Second Injury Fund claiming he was permanently and totally disabled due to a combination of the effect of his 2007 Injury and preexisting injuries, specifically listing the 1989 injury to his right knee. Steck reached a settlement with his employer regarding the workers' compensation claim. The Division of Workers' Compensation ("the Division") held an evidentiary hearing on the claim against the Second Injury Fund on December 1, 2009.

The Division found that Steck was permanently and totally disabled from the 2007 Injury alone, and that the Second Injury Fund was not liable as a result. Steck filed an application for review with the Commission. The Commission reversed the Division. The Commission found that Steck was permanently and totally disabled due to the combination of his 2007 Injury and his preexisting disabilities, rendering the Second Injury Fund liable. The Second Injury Fund appeals.

### Standard of Review

■ We are bound on appeal by the standard of review prescribed by section 287.495.1,[1] which provides:

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

" 'A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence.' " *Angus v. Second Injury Fund*, 328 S.W.3d 294, 297 (Mo.App. W.D. 2010) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)).

---

1. All statutory references are to RSMo 2000, as supplemented, unless otherwise indicated.

## Analysis

For its sole point on appeal, the Second Injury Fund claims that the Commission erred because its award was not supported by sufficient competent evidence because Steck is permanently and totally disabled *solely* as a result of the 2007 Injury and not as a result of the combination of the 2007 Injury and Steck's previous disabilities. We disagree.

■ Section 287.220 provides that " 'the Second Injury Fund is liable in certain cases of permanent disability where there is a preexisting disability.' " *Angus,* 328 S.W.3d at 304 (citation omitted). As applied to this case, where a preexisting partial disability combines with a disability from a subsequent injury to render a claimant permanently and totally disabled, the Second Injury Fund is liable. *Id.* The Second Injury Fund's liability is limited to the disability benefits attributable to the preexisting injury. *Hughey v. Chrysler Corp.,* 34 S.W.3d 845, 847 (Mo.App. E.D. 2000). The Second Injury Fund thus " 'serves to encourage the hiring of individuals who are already disabled to an extent which might render them susceptible to further injury and disability.' " *Angus,* 328 S.W.3d at 303 (quoting James B. Slusher, *The Second Injury Fund,* 26 Mo. L.Rev. 328 (1961)).

Here, the Second Injury Fund does not dispute that Steck is permanently and totally disabled. The only issue is whether the whole record contains sufficient competent and substantial evidence to support the Commission's finding that Steck's permanent and total disability is a result of the combination of his 2007 Injury and his previous disabilities.

■ To make this determination, the Commission was first obligated to determine the degree of disability from the 2007 Injury. *Ball–Sawyers v. Blue Springs School Dist.,* 286 S.W.3d 247, 254 (Mo.App. W.D.2009) (citing *Mihalevich Concrete Constr. v. Davidson,* 233 S.W.3d 747, 754 (Mo.App. W.D.2007)). " 'Preexisting disabilities are not relevant until this determination is made.' " *Angus,* 328 S.W.3d at 304 (citation omitted).

■ The Commission found the 2007 Injury resulted in a 28% permanent *partial* disability of the body as a whole for Steck. Stated differently, the Commission did not find that the 2007 Injury resulted in a permanent and total disability. " 'The determination of a specific amount or percentage of disability awarded to a claimant is a finding of fact within the unique province of the Commission.' " *Id.* (citation omitted). We examine the record as a whole to determine if it supports the Commission's finding.

At the hearing, Steck testified that he injured his back on two prior occasions. In 1974, Steck pulled a muscle in his back when he moved a large compressor while working for an engineering company. Steck did not seek treatment nor file a workers' compensation claim for this injury. Steck wore a back brace and was off work for approximately a week.

Steck testified that in approximately 1993, he sustained a second injury to his back while employed at Sears as a service technician. This injury did require medical treatment. After this injury, Steck was unable to work for two months. Steck testified, however, that once the 1993 back injury resolved itself, he had no further back problems until the 2007 Injury.

Steck testified about repeated injuries to his right knee. Steck dislocated his right knee while playing football when he was sixteen years old. In 1971, Steck re-injured his right knee while he was in the Navy when his knee buckled resulting in a fall. Both of these injuries required simi-

lar medical treatment involving the draining of the excess fluid from the knee and the use of a cast. After the 1971 right knee injury, Steck continued his service in the Navy and was discharged in January 1978. In 1987, while working as a civilian service technician at Whiteman Air Force Base, Steck's knee buckled while he was on a ladder, resulting in a fall and in dislocation of the knee. This injury required surgery and physical therapy. Steck filed a workers' compensation claim for this injury and received disability payments. As a result of the knee surgery, Steck suffered a massive pulmonary embolism. Steck testified he continued to suffer breathing difficulties as a result of the pulmonary embolism up to the time of the 2007 Injury.

Steck testified that he returned to work following the 1987 re-injury to his right knee. However, Steck could no longer walk fast, or carry heavy items. In addition, his right knee tended to buckle. In 2003, Steck had a total right knee replacement that ameliorated some of his issues including pain and instability. However, Steck testified that up to the time of the 2007 Injury, he continued to experience pain and limitations in the range of motion of his right knee, including a limitation on his ability to squat.

The Commission heard the testimony of two experts. Dr. George Carr ("Dr. Carr") performed an independent medical evaluation of Steck in May 2009. He rated Steck's 2007 Injury as a "30% permanent partial disability of the body as a whole related to his lumbosacral spine, because of the disc herniation and subsequent surgery." Dr. Carr did *not* opine that the 2007 Injury alone resulted in Steck being permanently and totally disabled.

Mr. Phillip Eldred ("Mr. Eldred"), a vocational rehabilitation specialist, testified that Steck "is permanently and totally disabled as a result of his [2007 Injury], combined with his preexisting medical conditions." Mr. Eldred did *not* testify that the 2007 Injury alone resulted in Steck being permanently and totally disabled.

The Commission had before it the Stipulation for Compromise Settlement between Steck and his employer in which Steck agreed to settle his workers' compensation claim against the employer for 28% permanent partial disability of the body as a whole attributable to the 2007 Injury. As the Commission noted in its Final Award, such an agreement does not bind the Commission, but "does serve as relevant evidence of the nature and extent of the employee's permanent disability attributable to the primary injury." (citing *Totten v. Treasurer of the State of Missouri, as Custodian of the Second Injury Fund,* 116 S.W.3d 624, 628 (Mo.App. E.D.2003)).

The Second Injury Fund did not present any witnesses, expert evidence, or medical records to rebut Steck's evidence about the nature and degree of disability from the 2007 Injury. Having reviewed the whole record, substantial and competent evidence supports the Commission's determination that the 2007 Injury resulted only in a permanent *partial* disability rated at 28% of the body as a whole.

■ We turn our attention, therefore, to the second inquiry the Commission was required to undertake. To trigger Second Injury Fund liability, Steck was required to demonstrate that a preexisting disability "represented an obstacle or hindrance" to his ability to work. *Ball–Sawyers,* 286 S.W.3d at 255. The Commission found that at the time of the 2007 Injury, Steck did indeed suffer from preexisting disabilities that posed a hindrance and obstacle to his employment. As a result, the Commission found that Steck's preexisting disabilities combined with the 28% permanent

partial disability resulting from the 2007 Injury to render Steck permanently and totally disabled.

In support of these determinations, the Commission heard the testimony of Steck, recited above. In addition, the Commission heard the testimony of Dr. Carr, who rated Steck's right knee at "15% permanent partial disability" due to the injury's "contribution to his chronic right knee pain with reduced range of motion and limited endurance." Dr. Carr also testified that although he assigned no rating, Steck's other medical issues were disabling to Steck to some degree.[2] Dr. Carr opined that the 2007 Injury was the "main factor in causing [Steck's] back problems," but that Steck's overall disability was affected by "all those other preexisting problems." Dr. Carr specifically concluded that "[t]he combination of impairments creates a substantially greater disability than the simple total of each."

The Commission heard the testimony of Mr. Eldred, who concluded that Steck's impairments prior to the 2007 Injury were vocationally disabling and constituted a hindrance or obstacle to his employment. Mr. Eldred testified that both Steck's back and knee problems combined to require restrictions on standing and sitting, and that the knee problem necessitated additional restrictions preventing Steck from working in extreme temperatures and/or around vibrations or high-exposed places. Mr. Eldred reached his conclusions after personally examining Steck and after reviewing records of Steck's work and educational history, Steck's past medical records, and the results of the examination by Dr. Carr. As previously noted, Mr. Eldred

opined that Steck "is permanently and totally disabled as a result of [the 2007 Injury], combined with his preexisting medical conditions."

Again, Dr. Carr's and Mr. Eldred's opinions were uncontradicted. The Commission's favorable citation to Dr. Carr's and Mr. Eldred's opinions in its Final Award indicates that the Commission believed the testimony of these experts to be credible. The Commission is the sole judge of witness credibility. *Anderson v. Emerson Elec. Co.*, 698 S.W.2d 574, 576 (Mo.App. E.D.1985) (overruled on unrelated grounds by *Hampton*, 121 S.W.3d 220). We conclude, therefore, that sufficient substantial and competent evidence exists on the record as a whole to support the Commission's conclusion that Steck suffered from preexisting disabilities which posed a hindrance and obstacle to his employment. We also conclude that the Commission's determination that Steck was permanently and totally disabled as a result of the combined effect of his 2007 Injury and his preexisting disabilities is supported by substantial and competent evidence on the record as a whole.

The Second Injury Fund relies on *ABB Power T & D Co. v. Kempker*, 236 S.W.3d 43 (Mo.App. W.D.2007) to argue that the Commission erroneously felt it was bound by the expert testimony of Dr. Carr and Mr. Eldred and failed to consider the testimony of Steck. The Second Injury Fund's reliance on *Kempker* is misplaced. In *Kempker*, the Commission found that an employee failed to demonstrate that his permanent and total disability was a result of the combined effect of his last injury and preexisting disabilities. *Id.* at

**2.** The record included evidence that Steck suffered degenerative arthritis as a result of his right knee replacement, had tinnitus following his service in the Navy, and, as a result of his naval service, had foot problems, which led to the insertion of screws in each big toe following the removal of bun-

ions, leaving him with significant pain and problems walking. The record also included evidence that Steck suffers from chronic pancreatitis, cardiac disease, coronary artery disease, lung disease, deep vein thrombosis, and pulmonary embolisms.

47–8. In that case, both a medical expert and a vocational consultant opined that the employee's total and permanent disability resulted from a combination of the last injury and preexisting disabilities. *Id.* However, the employee insisted in his testimony that after each prior injury he had been able to return to work without restrictions or limitations. *Id.* at 47. The employee also described the complications following his last injury which prevented his return to work. *Id.* at 46. These complications were directly attributable to the last injury as, according to the employee, he was completely asymptomatic before the last injury. *Id.* This court held that the Commission did not err in relying on the employee's testimony to conclude that the last injury was the sole cause of the employee's permanent and total disability. *Id.* at 51. We observed that the testimony of a claimant about " 'facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence.' " *Id.* (quoting *Reiner v. Treasurer of State of Missouri,* 837 S.W.2d 363, 367 (Mo.App. E.D.1992) (overruled on unrelated grounds by *Hampton,* 121 S.W.3d 220)). The Commission had expressly found that, notwithstanding the opinions of the medical and vocational experts, the medical records were consistent with the employee's testimony regarding the extent of disability from his last injury and the lack of effect of his prior injuries on his ability to work. *Id.*

 Here, in stark contrast, Steck testified that his prior disabilities remained issues for him up to the point of the 2007 Injury, imposing obstacles and hindrances on his employment. Steck's testimony was completely consistent, therefore, with the ultimate opinions offered by both Dr. Carr and Mr. Eldred about the combined effect of Steck's 2007 Injury and the preexisting disabilities. Thus, the Commission did not (as suggested by the Second Injury Fund) issue its Final Award because it felt bound to accept expert testimony notwithstanding contradictory testimony from Steck. Instead, Steck's testimony was consistent with the medical evidence. We acknowledge that the "Commission is the sole judge of witness credibility and is free to disbelieve the testimony of any witness even if there is no contrary or impeaching evidence." [3] *Kempker,* 236 S.W.3d at 51–52. In this case, however, we are not dealing with a scenario where the Commission rejected uncontradicted evidence. Rather, the Commission accepted the uncontradicted evidence of Steck and his experts. There is nothing in this record suggesting that the Commission committed error by doing so.

Point is denied.

All concur.

3. The Commission cannot, however, substitute its personal opinion "on the question of medical causation of [an injury] for the uncontradicted testimony of a qualified medical expert." *Wright v. Sports Associated, Inc.,* 887 S.W.2d 596, 600 (Mo. banc 1994) (overruled on unrelated grounds by *Hampton,* 121 S.W.3d 220). The only "causation" issue before the Commission was the extent to which Steck's permanent and total disability was jointly caused by the 2007 Injury and Steck's preexisting disabilities. Mr. Eldred's testimony would not have constituted "expert *medical* testimony" on causation. Because the Commission did not find in favor of the Second Injury Fund, we need not address whether Dr. Carr's testimony was precise enough on the issue of causation to constitute an uncontradicted medical opinion which would have bound the Commission.