

# In the
# Missouri Court of Appeals
# Western District

RONALD LAMY,                          )
                                      )
              Appellant,              )   WD85163
                                      )
v.                                    )   OPINION FILED:  July 26, 2022
                                      )
STAHL SPECIALITY COMPANY,             )
                                      )
              Respondent.             )

**Appeal from the Labor and Industrial Relations Commission**

Before Division Three: Cynthia L. Martin, Presiding Judge, Lisa White Hardwick, Judge,
W. Douglas Thomson, Judge

Ronald Lamy ("Lamy") appeals from the Labor and Industrial Relations Commission's ("Commission") final award denying his claim for workers' compensation benefits relating to an injury suffered to his left wrist.  Lamy argues on appeal that the Commission erred in concluding that an earlier compromise settlement between Lamy and his employer covered the injury to Lamy's left wrist.  Finding no error, we affirm.

## Factual and Procedural History[1]

Lamy began working for Stahl Specialty Company ("Employer"), a company that manufactures automotive and marine parts, in 1987. In June 2017, Lamy filed a claim for compensation with the Missouri Department of Labor and Industrial Relations Division of Workers' Compensation ("Division of Workers' Compensation") for an injury related to his "[l]eft upper extremity" suffered on August 26, 2016 ("August 2016 claim"). The August 2016 claim alleged a repetitive injury as follows:

> [Lamy], while in the course and scope of his employment suffered an accident, series of accidents or occupational disease while performing foundry processes of repetitive lifting and throwing aluminum which were the prevailing factors in his resultant injuries and disabilities. [Lamy] is entitled to receive and makes demand for such medical care and treatment as will cure and relieve him from the effects of the injuries . . . . [Lamy] is further entitled to receive and makes demand for temporary total/partial disability benefits . . . .

Employer referred Lamy to Dr. Gerald McNamara ("Dr. McNamara"). Dr. McNamara examined Lamy on August 31, 2016, five days after the date of the alleged injury to Lamy's upper left extremity. During that visit, Lamy complained of left shoulder pain, and numbness and tingling in his left hand.

After ruling out more conservative treatment options, Dr. McNamara performed surgery on Lamy's left shoulder on October 11, 2016. On October 24, 2016, Dr. McNamara released Lamy to return to right-handed work only, but limited Lamy to lifting no more than ten pounds with his right hand. Dr. McNamara also prescribed physical therapy for

---

[1]When reviewing the Commission's final award, we review the facts neutrally, and we neither view the facts in the light most favorable to the final award nor make all reasonable inferences in the light most favorable to the final award. *Ritchie v. Silgan Containers Mfg. Corp.*, 625 S.W.3d 787, 791 n.2 (Mo. App. W.D. 2021). Any credibility determinations made by the Commission, however, are binding. *Id.*

Lamy on that date. Lamy had additional follow-up appointments with Dr. McNamara on January 16, 2017, and on February 13, 2017. Following the February 13, 2017 appointment, Dr. McNamara determined that Lamy was ready for work conditioning to prepare him for a full return to work, and released Lamy to work with restrictions that limited lifting with his left arm to five pounds and no higher than shoulder height. In the notes from the February 13, 2017 appointment, Dr. McNamara indicated that Lamy still had carpal tunnel syndrome in the left wrist that might require future attention.

Following additional outpatient physical therapy and work conditioning, Dr. McNamara released Lamy to work without restrictions on March 13, 2017. Lamy had a follow-up appointment with Dr. McNamara on April 10, 2017, after which Dr. McNamara concluded that Lamy "ha[d] reached maximum medical improvement" and released Lamy from care. Dr. McNamara concluded that Lamy had a 4 percent permanent partial disability to his "left upper extremity" that would not benefit from future medical or prescriptive care.

Lamy's attorney referred Lamy to Dr. James Stuckmeyer ("Dr. Stuckmeyer") for a medical evaluation. Lamy was evaluated by Dr. Stuckmeyer on November 9, 2017. Lamy reported that, while he had returned to regular work, he continued to have ongoing symptoms in his left shoulder. Lamy also reported to Dr. Stuckmeyer that he was experiencing "symptoms of numbness and tingling in [his] left hand, nocturnal awakeness, as well as decreased grip strength." Dr. Stuckmeyer concluded that Lamy required additional treatment, including physical therapy and a repeat arthroscopic procedure, for his left shoulder. Dr. Stuckmeyer concluded that, without additional treatment, Lamy had

3

a 35 percent permanent partial disability to his left shoulder.  Dr. Stuckmeyer also opined that Lamy still had evidence of left carpal tunnel syndrome that was related to Lamy's work activities and that might require future surgical intervention.

After receiving the rating from Dr. McNamara for disability to the left upper extremity and the rating from Dr. Stuckmeyer for disability to the left shoulder, Lamy and Employer entered into a stipulation for compromise settlement ("compromise settlement") of Lamy's August 2016 claim.  The compromise settlement provided that Employer would pay Lamy a lump sum of $14,000, representing a 12.5 percent disability rating for Lamy's left shoulder.  The compromise settlement expressly provided that it "settle[d] all issues between the parties."  The compromise settlement further provided:

> THE EMPLOYEE UNDERSTANDS: by entering into this settlement, except as provided by Section 287.140.8, RSMo, the EMPLOYEE is forever closing out this claim under the Missouri Workers' Compensation Law; that EMPLOYEE will receive no further compensation or medical aid by reason of this accident/disease; that EMPLOYEE has the right to a hearing of the EMPLOYEE'S claim, which may result in EMPLOYEE receiving more money or less money than is provided by this settlement; that *EMPLOYER/INSURER and/or SECOND INJURY FUND is/are released from all liability for this accident/disease upon approval by the Administrative Law Judge.* . . . The PARTIES by their signatures below agree to the settlement, and the PARTIES request and recommend that this settlement be approved and that the settlement is in accordance with the rights of the parties.  The EMPLOYER and EMPLOYEE indicate that the settlement is not the result of undue influence or fraud; the EMPLOYEE fully understands his/her rights and benefits; and the EMPLOYEE voluntarily agrees to accept the terms of the agreement.

Lamy initialed to indicate that he had "full awareness of the consequences of this settlement as set out above."  Lamy, his counsel, and Employer's counsel signed the compromise

settlement, and an administrative law judge ("ALJ") approved the compromise settlement on May 2, 2018.

Lamy filed a second workers' compensation claim on June 26, 2018, alleging that on February 13, 2017, Lamy suffered an injury to his left wrist ("February 2017 claim"). February 13, 2017, was the date on which Dr. McNamara noted that Lamy still suffered from left carpal tunnel syndrome that might require future attention. As had been the case with the August 2016 claim, the February 2017 claim alleged a repetitive workplace injury as follows:

> [Lamy], while in the course and scope of his employment suffered an accident, series of accidents or occupational disease while performing foundry processes of repetitive lifting and throwing aluminum which were the prevailing factors in his resultant injuries and disabilities. [Lamy] is entitled to receive and makes demand for such medical care and treatment as will cure and relieve him from the effects of the injuries . . . . [Lamy] is further entitled to receive and makes demand for temporary total/partial disability benefits . . . .

In response to the February 2017 claim, Employer again referred Lamy to Dr. McNamara. Lamy was then scheduled for surgery on the left wrist. On August 19, 2019, a few days prior to the scheduled surgery, Dr. McNamara wrote a letter to the Employer's adjuster. In the letter, Dr. McNamara noted that Lamy had complained of numbness and tingling in his left-hand in August 2016, and that treatment for Lamy's left hand "was put on hold while he recovered from shoulder surgery." Dr. McNamara opined that Lamy's current complaints about his left hand were related to the repetitive work injury that had been the subject of the August 2016 claim. Lamy's scheduled surgery was cancelled.

5

Lamy retained Dr. Anne Rosenthal ("Dr. Rosenthal") to conduct a medical evaluation and to review his medical records in July 2020. Dr. Rosenthal concluded that Lamy sustained a work-related injury on February 13, 2017, that was the prevailing factor in causing left carpal tunnel syndrome. Dr. Rosenthal's report did note that Lamy had first reported numbness and tingling in the left hand when he was seen by Dr. McNamara in August of 2016. Dr. Rosenthal was not aware that Lamy was not using his left hand from October 2016 (when he had left shoulder surgery) until he was released to work without restrictions in March 2017. Dr. Rosenthal relied on Dr. McNamara's February 13, 2017 medical notes acknowledging that Lamy had left carpal tunnel syndrome to conclude that Lamy sustained a work-related injury on February 13, 2017.

On May 4, 2021, an ALJ heard Lamy's February 2017 claim. Among the issues before the ALJ was whether Lamy's "request for medical benefits and compensation [was] barred by the prior settlement of the August 26, 2016 . . . injury." Lamy testified at the hearing, and the ALJ received Lamy's medical records, Lamy's August 2016 claim, and the compromise settlement as exhibits.

The ALJ issued a written decision on July 8, 2021, denying Lamy's claim ("ALJ Award"). The ALJ Award made multiple findings of fact, including a finding that Dr. McNamara's opinions were more credible than Dr. Rosenthal's opinions. The ALJ Award thus credited Dr. McNamara's opinion that the prevailing factor for Lamy's left carpal tunnel syndrome was the same as the prevailing factor for his left shoulder injury: the repetitive work activities that gave rise to the August 2016 claim. The ALJ Award noted that Lamy voluntarily elected to settle his August 2016 claim with the knowledge that both

6

Dr. McNamara and Dr. Stuckmeyer had diagnosed him with left carpal tunnel syndrome that might require future surgery, and with the knowledge that the compromise settlement settled "all issues between the parties." The ALJ Award concluded that the August 25, 2016 work injury and resulting August 2016 claim were resolved in the compromise settlement, so that, absent proof of fraud or mistake, the ALJ was without jurisdiction to reopen the August 2016 claim to amend the compromise settlement to include compensation for injuries to Lamy's left wrist.

Lamy appealed the ALJ Award to the Commission. By a 2-1 vote, the Commission affirmed the ALJ Award and incorporated it by reference into the Commission's final award denying compensation ("Final Award").

Lamy appeals.

## Standard of Review

We review the findings and conclusions of the Commission, not of the ALJ. *Greig v. McCaleb*, 638 S.W.3d 600, 603 n.4 (Mo. App. W.D. 2021). "[W]here[, as here,] the Commission affirms the ALJ's Award and incorporates the ALJ's findings by reference into the Commission's Final Award, . . . .we review for error the ALJ's findings and conclusions as adopted by the Commission." *Id.*

Section 287.495.1[2] sets forth the standard we must apply when reviewing the Commission's Final Award:

---

[2]All statutory references are to RSMo 2016 as supplemented through the date of February 13, 2017, the alleged date of Lamy's work injury set forth in his February 2017 claim, unless otherwise indicated.

7

The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

"The Commission's decision must be 'supported by competent and substantial evidence upon the whole record.'" *Klecka v. Treasurer of Mo.*, 644 S.W.3d 562, 565 (Mo. banc 2022) (quoting Mo. Const. article V, section 18). In determining whether the Commission's decision is supported by competent and substantial evidence, we defer to the Commission's determinations as to the credibility of the witnesses and as to the weight given to conflicting evidence. *Id.* at 565-66. "We 'will affirm the Commission's decision if [we] determine[] that the Commission could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it.'" *Moss v. Treasurer of State of Mo.--Custodian of Second Injury Fund*, 570 S.W.3d 110, 115 (Mo. App. W.D. 2018) (quoting *Treasurer of State of Mo. v. Majors*, 506 S.W.3d 348, 352 (Mo. App. W.D. 2016)). If, however, the Commission's decision is based on its interpretation and application of the law, we review the Commission's legal conclusions and decision *de novo*. *Id.*

## Analysis

Lamy presents a single point on appeal. He argues that there was not sufficient competent evidence in the record to support the Commission's finding that the compromise

8

settlement covered the injury to the left wrist submitted in Lamy's February 2017 claim. Lamy argues that the compromise settlement only bound the parties with respect to the injury to Lamy's left shoulder.

Though Lamy characterizes his point on appeal as a challenge to whether sufficient competent evidence supported the Commission's finding, Lamy acknowledges in his brief that the Commission's factual findings are not in dispute. [Appellant's Brief, p. 2] The argument portion of Lamy's brief thus does not develop a challenge to whether sufficient competent evidence supported the Commission's findings, and instead challenges the Commission's legal conclusion about the effect of the compromise settlement. As a result, Lamy's brief fails to employ the three-part analytical framework required to determine whether sufficient competent evidence supports the Commission's Final Award.[3] *See Lynch v. Treasurer of State of Mo.*, 635 S.W.3d 573, 581 (Mo. App. E.D. 2021) (setting forth the three-part analytical framework). As such, the argument portion of Lamy's brief which asserts that we are obligated to review the Commission's legal conclusion about scope of the compromise settlement *de novo*, does not align with Lamy's point on appeal.

"Rule 84.04 plainly sets forth the required contents of briefs filed in all appellate courts," all of which are mandatory. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc

---

[3]But then in his reply brief, Lamy analyzes his point on appeal using the three-prong analytical framework. *See Lynch v. Treasurer of State of Mo.*, 635 S.W.3d 573, 581 (Mo. App. E.D. 2021) ("When a claimant challenges the Commission's findings on [the basis that they are not supported by substantial and competent evidence], the claimant must: (1) marshal all record evidence favorable to the award; (2) marshal all unfavorable evidence, subject to the Commission's explicit or implicit credibility determinations; and (3) show, in the context of the whole record, how the unfavorable evidence so overwhelms the favorable evidence and its reasonable inferences that the award is, in context, not supported by competent and substantial evidence."). "[A]rguments omitted from an appellant's initial brief may not be supplied in the reply brief, and we are precluded from addressing arguments made for the first time in the reply brief." *State ex rel. Schmitt v. Choi*, 627 S.W.3d 1, 18 n.14 (Mo. App. W.D. 2021).

2022). Lamy's brief fails to comply with Rule 84.04(e), which provides that "[t]he argument shall be limited to those errors included in the 'Points Relied On.'" If a point relied on is not developed in the argument portion of the brief by showing how the principles of law and facts of the case interact, it is deemed abandoned. *In re S.H.P.*, 638 S.W.3d 524, 533 (Mo. App. W.D. 2021). And claimed errors that are raised only in the argument portion of the brief but not contained in a point relied on are not preserved for our review. *State ex rel. Dalton v. Mo. Comm'n on Hum. Rts.*, 618 S.W.3d 640, 648 n.10 (Mo. App. W.D. 2020).

However, while briefing deficiencies support dismissal of an appeal, we are permitted to reach the merits of the case in those limited scenarios where the brief gives notice of the issue presented on appeal, so long as doing so will not require us to step into the role of advocate. *Lexow*, 643 S.W.3d at 505, 509. Here, Lamy's point relied on combines with the argument portion of his brief to permit us to comfortably conclude, without stepping into the role of advocate, that Lamy is challenging whether the Commission's uncontested factual findings support a legal conclusion that the compromise settlement foreclosed the Commission's jurisdiction to consider the February 2017 claim for injury to his left wrist. *See* section 287.495.1(3) (permitting an appellate court to review whether the facts found by the Commission support the award). We address Lamy's point on appeal accordingly.

Settlement agreements resolving workers' compensation claims are authorized by section 287.390, which provides:

10

> Parties to [workers' compensation claims] may enter into voluntary agreements in settlement thereof, but no agreement by an employee . . . to waive his or her rights under this chapter shall be valid, nor shall any agreement of settlement or compromise of any dispute or claim for compensation under this chapter be valid until approved by an administrative law judge or the commission . . . . An administrative law judge, or the commission, shall approve a settlement agreement as valid and enforceable as long as the settlement is not the result of undue influence or fraud, the employee fully understands his or her rights and benefits, and voluntarily agrees to accept the terms of the agreement.

Section 287.390.1. Once a compromise settlement entered pursuant to section 287.390 is approved by an ALJ, "the jurisdiction of the Commission is exhausted, and the matter is at an end so far as the Commission is concerned." *Derby v. Jackson Cnty.*, 141 S.W.3d 413, 416 (Mo. App. W.D. 2004) (quoting *Shockley v. Laclede Elec. Co-op.*, 825 S.W.2d 44, 47 (Mo. App. S.D. 1992)).

Lamy's point on appeal does not contend that the compromise settlement was a result of undue influence or fraud.[4] Instead, Lamy contends that the compromise settlement was limited in its scope to settlement of his left shoulder injury claim. He points to the fact that the compromise settlement only included an agreed disability rating for the left shoulder without reference to the left wrist.

Lamy's contention artificially focuses on an isolated provision in the compromise settlement, and ignores that the compromise settlement expressly provides that "the EMPLOYEE is forever closing out *this claim* under the Missouri Workers' Compensation Law," and "that EMPLOYEE will receive no further compensation or medical aid by

---

[4]Lamy's reply brief summarily alleges that Lamy was "tricked" into entering into the compromise settlement for injury to his left shoulder. Lamy's conclusory assertion is not self-proving, and in any event, "we are precluded from addressing arguments made for the first time in the reply brief." *State ex rel. Schmitt*, 627 S.W.3d at 18 n.14.

reason of *this accident/disease*." (Emphasis added.) The "claim" and "accident/disease" referred to in the compromise settlement is Lamy's August 2016 claim, which sought compensation for injury to the "left upper extremity" brought on by repetitive injury. Consistent with his claim of repetitive injury to the "left upper extremity," Lamy's complaints to Dr. McNamara in August 2016 included pain in the left shoulder and numbness and tingling in the left hand, both of which are anatomical components of the left upper extremity.

Lamy does not challenge the Commission's finding that he knew he had been diagnosed by both Dr. McNamara and Dr. Stuckmeyer with left carpal tunnel syndrome before entering into the compromise settlement of his August 2016 claim. Lamy does not challenge the Commission's finding that left carpal tunnel syndrome is a repetitive injury, consistent with the nature of the "accident" identified in the August 2016 claim for injuries to the left upper extremity. Lamy does not challenge the Commission's finding that he entered into the compromise settlement of the August 2016 claim in exchange for Employer's agreement to pay a lump sum of $14,000 based on an approximate disability of 12.5 percent to Lamy's left shoulder in order to "settle[] all issues between the parties." And Lamy does not challenge the Commission's conclusion that Dr. Rosenthal's opinion that Lamy's left wrist injury was the result of a workplace accident on February 13, 2017, was not credible. The Commission did not commit legal error when it found, based on the uncontested facts, that pursuant to section 287.390, the compromise settlement exhausted the Commission's jurisdiction to reopen the August 2016 claim in order to entertain the February 2017 claim.

12

Lamy asks us to attach significance to Dr. McNamara's August 19, 2019 letter, written after Lamy filed the February 2017 claim. Lamy argues that although he reported tingling and numbness in his left hand to Dr. McNamara in August 2016, the August 19, 2019 letter confirms that Dr. McNamara made a medical decision to put off treating Lamy's left carpal tunnel syndrome until Lamy recovered from surgery to his left shoulder. Lamy thus contends that Dr. McNamara's conclusion that Lamy's left wrist injury was "related to his origin[al] work injury dated 08/25/2016" was merely a medical opinion that was not controlling on the issue of the scope of the compromise settlement. Lamy further intimates that Employer's adjuster reached out to Dr. McNamara to secure the August 19, 2019 letter in order to avoid paying for scheduled surgery on the left wrist, despite having authorized and paid for diagnostic tests on Lamy's left wrist after the February 2017 claim was filed.[5]

Lamy's arguments have no bearing on the legal effect of the compromise settlement. Dr. McNamara's August 19, 2019 letter underscores that Lamy knew he had a repetitive injury to his left wrist (a portion of his left upper extremity) when he saw Dr. McNamara in August 2016, and before he entered into the compromise settlement. Yet, despite this knowledge (which was reinforced by Dr. Stuckmeyer's opinion), Lamy settled all issues with the Employer involving his August 2016 claim for repetitive injury to the left upper extremity.

---

[5]While Dr. McNamara's letter indicates that diagnostic testing was performed on Lamy's left wrist on August 5, 2019, there is nothing in the record that explicitly provides that Employer's workers' compensation insurer preauthorized that diagnostic testing or paid for the same. For the purposes of considering Lamy's point on appeal, however, we infer from the record that, because Dr. McNamara's notes identify Employer's workers' compensation insurer as Lamy's insurer, the workers' compensation insurer authorized, and later paid for, the diagnostic testing of Lamy's left wrist.

Lamy asserts that the Commission's reliance on *Miller v. U.S. Airways Group, Inc.*, 316 S.W.3d 462 (Mo. App. W.D. 2010), was improper. In *Miller*, we affirmed the Commission's dismissal of a successive claim for bilateral carpal tunnel syndrome as a result of repetitive trauma. *Id.* at 466. Lamy attempts to distinguish *Miller* because it involved successive claims filed for injury to the same body part (the wrist), where his successive claims involved injuries to different body parts. However, Lamy's August 2016 claim and February 2017 claim each alleged an identical repetitive injury. And though the February 2017 claim was purportedly limited to the left wrist, the August 2016 claim covered the left upper extremity, which includes the left wrist. The Commission's reliance on *Miller* was not improper.

Lamy also challenges the Commission's reliance on *Shockley v. Laclede Electric Cooperative*, 825 S.W.2d 44 (Mo. App. S.D. 1992), and *Ritch v. Professional Transportation, Inc.*, 599 S.W.3d 492 (Mo. App. S.D. 2020). In *Shockley*, our Southern District held that where a workers' compensation settlement provided that the claimant understood he would receive no further compensation or medical aid, the Commission was deprived of jurisdiction over a later request to set aside the compromise settlement. 825 S.W.2d at 49. Similarly, in *Ritch*, the Southern District concluded that the Commission correctly determined that it had no jurisdiction to set aside a compromise settlement where the claimant argued his worsening medical condition rendered the compromise settlement no longer reasonable. 599 S.W.3d at 493, 495. Both cases are squarely on point. While Lamy did not explicitly ask the Commission to reopen the compromise settlement of his August 2016 claim, consideration of the February 2017 claim would have had the same

14

effect. The Commission did not err in relying on *Shockley* and *Ritch* to conclude that it was without jurisdiction to reopen the August 2016 claim in order to consider the February 2017 claim.[6]

Finally, Lamy relies on our decision in *Treasurer of State of Missouri-Custodian of Second Injury Fund v. Steck*, 341 S.W.3d 869 (Mo. App. W.D. 2011), to argue that the compromise settlement did not foreclose the Commission's consideration of the February 2017 claim. *Steck* is inapposite. In *Steck*, we considered whether a compromise settlement between a claimant and an employer that included an agreement about the extent of permanent partial disability could be relied on by the Commission in later determining Second Injury Fund liability, where the Second Injury Fund was not a party to the agreement. *Id.* at 870. We held that "such a[ compromise settlement] agreement does not bind the Commission, but 'does serve as relevant evidence of the nature and extent of the employee's permanent disability attributable to the primary injury.'" *Id.* at 873 (quoting *Totten v. Treasurer of State of Mo.*, 116 S.W.3d 624, 628 (Mo. App. E.D. 2003)). *Steck* is not relevant to determining the scope of a compromise settlement, and thus the extent to which a compromise settlement is binding on the parties to the agreement.

---

[6]Lamy also claims that the Commission's reliance on *Krysl v. Treasurer of Missouri*, 591 S.W.3d 13 (Mo. App. E.D. 2019), for the proposition that an occupational disease becomes an injury at the time it causes an employee to become disabled and seek medical treatment was erroneous because the date for compensability of Lamy's left carpal tunnel syndrome was not an issue in the case. Lamy, however, does not explain how citation to *Krysl* affected the Commission's Final Award. *See Burns v. Taylor*, 589 S.W.3d 614, 626 (Mo. App. W.D. 2019) ("'Merely asserting error without making a showing of how that error was somehow prejudicial is not sufficient for reversal.'" (quoting *Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 166 (Mo. banc 2006))).

15

The Commission did not commit legal error when it concluded that the compromise settlement exhausted its jurisdiction to entertain Lamy's February 2017 claim.  Lamy's point is denied.

## Conclusion

The Commission's Final Award is affirmed.


_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur

16